ALEXANDER McKNIGHT AND DAWSON McKNIGHT, PLAIN-
TIFFS-RESPONDENTS, v. CLIFFORD CASSADY, DE-
FENDANT, AND BOARD OF EDUCATION OF THE
TOWNSHIP OF UPPER PITTSGROVE, IN THE COUNTY
OF SALEM, NEW JERSEY, DEFENDANT-APPELLANT.

Submitted May 25, 1934—Decided October 5, 1934.

For the respondents, *Powell & Errickson.*

For the appellant, *Leroy W. Loder.*

The opinion of the court was delivered by

LLOYD, J. The action in this case was brought against the board of education and one Cassady to recover damages for injuries received by plaintiffs in a collision between an automobile in which they were riding and a school bus owned by the board of education and operated by Cassady.

The basis of the action was the negligent operation of the bus by Cassady, and that solely. The defense by both defendants was a denial of negligence, and the board of education set up the further defense that in the operation of the bus it was exercising a public duty in the transportation of school children living remote from the school house. The verdict

of the jury was in favor of the plaintiffs against the board of education and an exoneration of Cassady.

Motions for nonsuit and for the direction of a verdict in favor of the defendant the board of education were made and denied. Upon these rulings the case is presented here for determination.

The inconsistent action of the jury in exonerating the operator of the bus and assessing damages against his employer is not made the basis of appeal, as it might have been (*Vaniewsky* v. *Demarest,* 106 *N. J. L.* 34; *affirmed,* 107 *Id.* 389) (probably because the board, if liable, was contented with the amount of the jury's award), and in view of this fact we cannot consider this phase of the case.

Among the reasons urged in support of the motions was one that the school board, a governmental agency of the state, was operating the bus as a public duty under authority of law. The learned trial judge deemed that the authorities presented to him did not justify favorable action and for that reason refused the motions, to which ruling exception was taken.

The transportation of school children received the attention of the legislature as early as 1903 when at its second session of that year as part of the act "to establish a thorough and efficient system of free public schools, and to provide for the maintenance, support and management thereof" (chapter 1, page 5), in section 117 (*Pamph. L.* 1904, *p.* 45) it enacted as follows:

"Whenever in any district there shall be children living remote from the school house, the board of education of such district may make rules and contracts for the transportation of such children to and from school. Nothing in this section shall be so construed as to prohibit a board of education from making contracts for the transportation of children to a school in an adjoining district when such children shall be transferred to said district by order of the county superintendent of schools, or when any children shall attend school in a district other than that in which they shall reside by virtue of an agreement made by the respective boards of education."

In 1930, chapter 13 (*Pamph. L., p.* 29) was enacted as a supplement as follows:

"Whenever in any school district where the board of education in such district may have the power to provide for the transportation of school children in said district to and from school, the board of education of any such school district may enter into a contract for such transportation for a term of not exceeding three years, providing such contract shall be approved by the county superintendent of schools."

In 1933, section 117 of the original act was amended (*Pamph. L.* 1933, *ch.* 262, *p.* 703) so as to prohibit the making of contracts for transportation unless first publicly advertising for bids. Thereto was added the significant provision that "nothing herein contained shall apply to school buses owned by boards of education." Section 117 was further amended in the same year (chapter 383, page 1072), limiting the power to make contracts without advertisement to contracts not exceeding $300, but likewise containing the provision last quoted.

The accident happened before the enactment of either of the statutes of 1933 and hence they were inapplicable to the present case, and in themselves afforded no basis of liability. Both they and the act of 1930 are authority, however, as a legislative declaration which in effect construes, as we conceive it, section 117 as originally enacted.

This section it will be noted contemplates two methods of dealing with the serious problem then arising by the introduction of the automobile and its promise of soon supplanting the horse-driven vehicle. The first was to make rules for the transportation of school children living remote from the school house; the second was to make contracts for like transportation; from which as we construe this language it was contemplated that the school boards would either function themselves and by their own agencies see to the safe transportation of their school children, or enter into contracts with third persons to the same end. The power to make rules should be fairly understood as authority to "provide" for such transportation as recognized in the act of 1930 and

appears to have been so construed by school boards for a generation as is evident from the common practice of these bodies in operating buses directly for the purpose.

Recurring again to the legislation of 1933 we have the requirement that first all contracts for transportation should be advertised, and later that those in excess of $300 a year should be so advertised, and the significant provision that nothing contained therein should apply to buses owned by boards of education themselves. We thus have a construction of the original legislation in the use of the word "rules" and a recognition that it conferred authority on the boards respecting buses owned by them as in nowise subject to contract operation, and in effect to declare what we conceive to be the true intent and purpose of section 117, namely, to provide for the transportation of children living remote from the school house.

As so construed the operation of the bus in the present case was a governmental function of the board of education as an agency of the state. Such being the case it has long been the settled law that liability in such cases does not exist for the negligence of such body. *Florio* v. *Jersey City,* 101 *N. J. L.* 535; *Johnson* v. *Board of Education of Wildwood,* 102 *Id.* 606.

The judgment is reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Heher, Perskie, Van Buskirk, Kays, Hetfield, Dear, Wells, JJ. 15.