JOHN F. KANE, PLAINTIFF, v. BOARD OF EDUCATION OF THE TOWN OF MONTCLAIR, IN THE COUNTY OF ESSEX, DEFENDANT.

Decided November 7, 1941.

For the plaintiff, *Sullivan & Sullivan.*

For the defendant, *George S. Harris.*

WOLBER, C. C. J. This matter comes before me on a motion to strike the complaint on the ground that it is insufficient in law. *Supreme Court Rule* 40.

The complaint is set forth in two counts. They allege that the plaintiff sustained personal injuries as a result of a fall on the evening of November 14th, 1939, down a flight of steps located adjacent to the George Inness School in Montclair. Plaintiff alleges he attended a theatrical performance of The Studio Players in that school building and that the building and premises were under the control of the defendant. He further contended that the defendant's conduct was tortious in that it failed to keep lights burning to illuminate the stairway by which the plaintiff sought to leave the building. Admitting for the purposes of this motion all the facts well pleaded in the complaint, the defendant asserts that neither count of the complaint discloses a cause of action.

*R. S.* 18:5-30; *N. J. S. A.* 18:5-30, provides:

"No school district shall be liable for injury to the person from the use of any public grounds, buildings or structures, any law to the contrary notwithstanding." *Source: L.* 1933, *c.* 460, *sec.* 1, *p.* 1550.

Common Pleas Judge Hartshorne in *Falcone* v. *Board of Education of Newark* (*Essex County Court of Common Pleas,* 1939), 17 *N. J. Mis. R.* 75; 4 *Atl. Rep.* (2d) 687,

considered the question of how far the public school system of this state is, as such, liable for injury to the person. In that case, while plaintiff's intestate, a girl, was using a wash-room and lavatory in a public school building on a school playground in Newark, a slate slab, which acted as a screen, fell upon the girl, as the result of which she died. In determining the real question, he had to appraise the effect of the aforesaid statute. He found that no language could be clearer than the simple words of the 1933 act and deduced an intent thereof to modify the common law, not only from the generality of its language, but from the fact that the law was to apply "any law to the contrary notwithstanding."

In *Allas* v. *Rumson* (1935), 115 *N. J. L.* 593; 181 *Atl. Rep.* 175, Mr. Justice Heher said:

"The general rule is that one who sustains special damage from a common nuisance has an action therefor against the creator of the nuisance, although the latter may also be subject to indictment. But there is a firmly established exception to this rule, grounded in 'ancient precedent and public policy,' that, in the absence of statutory provision to the contrary, a municipality is not liable to an individual for its failure to exercise an imperative governmental function, or for the negligence of its officers or agents in the performance of a public duty imposed on it by law, whereby a public wrong has been done for which an indictment will lie. The injurious consequences of such a default may not be repaired by private action; the wrong is remediable only by indictment or presentment. * * *

"There is, of course, a well recognized distinction, in respect of liability for negligence, between the exercise of a governmental function or duty imposed upon the municipality by law for the benefit of the public, and from the performance of which no profit or advantage is derived, and powers conferred for the accomplishment or corporate purposes essentially special or private in character, in respect of which the municipality stands upon the same footing as a private corporation. * * *

"Generally, the test of liability to a private action for special damage is whether such damage is or is not a part of

a public wrong for which an indictment would lie. * * *
But this exemption from liability does not extend to private
injury resulting from active wrongdoing chargeable to the
municipal corporation. * * *

"* * * There is some confusion in the adjudicated cases
as to what constitutes active wrongdoing by a municipality,
and the line of demarcation is not always clearly maintained.
The difficulty usually lies in the application of the principle
to the facts of the particular case. The true distinction seems
to be whether the private injury has resulted from a wrongful
act or positive misfeasance, as distinguished from mere neg-
ligence. A private action must rest upon some positive,
affirmative act, 'wrongful in itself, and detrimental to the
plaintiff.' "

In *Hammond* v. *County of Monmouth* (*Supreme Court*,
1936, Perskie, J.), 117 *N. J. L.* 11; 186 *Atl. Rep.* 452, a
culvert was held not to come within the purview of *Pamph.
L.* 1935, *ch.* 460, absolving counties from liability for injury
to the person from the use of any public grounds, buildings
or structures.

The late Circuit Court Judge Lawrence in *Cohen* v. *Mor-
ristown* (*Supreme Court,* 1937), 15 *N. J. Mis. R.* 288; 190
*Atl. Rep.* 851, held that chapter 460 of the laws of 1933 was
not applicable to a culvert or bridge, nor to a sidewalk lead-
ing from a public park to a public street. *Selph* v. *Morris-
town* (1938), 16 *N. J. Mis. R.* 19.

In *Leeds* v. *Atlantic City* (1935, Jayne, C. C. J.), 13 *N. J.
Mis. R.* 868; 181 *Atl. Rep.* 892, the city was charged with
negligence in the construction and maintenance of seats at
an entertainment conducted by the city for profit in the
municipal Convention Hall, to which the plaintiff was invited.
Judge Jayne pointed out that the convention Hall in Atlantic
City in which the plaintiff was injured is maintained and the
entertainments therein are conducted under statutory author-
ity. *Pamph. L.* 1929, *p.* 396, and that the legislature, in
conferring the power to maintain convention halls, said:

" 'It being the intent of this act that such municipality
shall be enabled to operate such station or hall in the business-
like manner similar to the methods that would be employed

if the station or hall was operated by a private and not a municipal corporation.' "

*Cf. Bianchi* v. *South Park Presbyterian Church* (1939, Heher, J.), 123 *N. J. L.* 325; 8 *Atl. Rep.* (2d) 567, holding that a religious society is exempt from liability for damages to a non-member beneficiary of its incidental philanthropy who suffers injury by reason of its negligence in the management of a house used as an appurtenance to a church.

In the Leeds case the court said that if it may be assumed that the legislature may grant to a municipality, engaged in a private enterprise, an exemption from liability in tort which it denies to private corporations similarly engaged, no such intention on the part of the legislature should be merely surmised. Such an intention should be clearly evident, otherwise it should not be inferred that the legislature intended the statute to be positively repugnant and inimical to the settled law, and reached the conclusion that chapter 460 of the laws of 1933 did not absolve the defendant from liability to the plaintiff.

*R. S.* 18:5-22; *N. J. S. A.* 18:5-22, provides:

"The board of education of any school district may, subject to reasonable regulations to be adopted by such board, * * * permit the use of any school house and rooms therein, and the grounds and other property of the district, when not in use for school purposes, for any of the following purposes: * * *

"d. For such meetings, entertainments, and occasions where admission fees are charged as may be approved by the board of education."

In the instant case the exercise of no proprietary power by the school board is shown. The school building where the alleged accident took place was erected for the purpose of providing instruction for the children of the Town of Montclair. This is definitely a governmental function. *McKnight* v. *Cassady* (1934, Lloyd, J.), 113 *N. J. L.* 565; 174 *Atl. Rep.* 865; *Johnson* v. *Board of Education, Wildwood* (1926, Parker, J.), 102 *N. J. L.* 606; 133 *Atl. Rep.* 301.

On the evening in question the defendant had express legislative authority to permit The Studio Players, a theatre

group, to use the school. There is no allegation in the complaint that the defendant operated the school auditorium for profit, as was the case in the Atlantic City Convention Hall in *Leeds* v. *Atlantic City, supra*. There is no statutory authorization for a school district to rent school buildings for a profit.

The instant case presents facts that are different from those in any of the foregoing cases where the statutory exemption was denied by our courts. This case is more like the Falcone case, and for that reason, I must reach the conclusion that the statute expressly exempting a school district from liability for personal injuries resulting from the use of public grounds, buildings or structures, applies. Both counts of the complaint must therefore be stricken.