CHARLENE DOBBINS, INFANT BY HER GUARDIAN *AD LITEM*, PAULINE DOBBINS WHITNEY AND PAULINE DOBBINS WHITNEY, INDIVIDUALLY, PLAINTIFFS-RE-SPONDENTS, v. BOARD OF EDUCATION OF HENRY HUDSON REGIONAL HIGH SCHOOL, DEFENDANT-AP-PELLANT, AND BETTY KIMBER, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued May 14, 1973—Decided May 24, 1974.

14

Before Judges FRITZ, LYNCH and TRAUTWEIN.

*Mr. John E. Riehl* argued for appellant (*Messrs. Wolff & Britt*, attorneys, *Mr. Roy F. Britt* on the brief).

*Mr. Philip G. Auerbach* argued for respondents (*Messrs. Drazin, Warshaw, Auerbach and Rudnick,* attorneys).

PER CURIAM. On November 3, 1967 Charlene Dobbins (Charlene), a 16-year-old junior at Henry Hudson Regional High School, was injured when she fell during gym class. The class commenced indoors with physical fitness tests and concluded its last several minutes outdoors under the supervision of its teacher, defendant Betty Kimber (Kimber). Miss Kimber instructed the class, in groups of five to eight, to run on a macadam driveway around a grass island located in a parking lot. There was conflict in the testimony as to whether the activity was actually a race and whether Kimber was timing the girls with a stopwatch. The length of time to run the course was estimated to be from a minute to a minute and a half. Charlene, in one of the last groups to run the designated course, testified that she slipped on loose gravel or pebbles at a point where the macadam declined. She fell to the pavement and sustained serious injuries to her knee.

The complaint was in four counts. The first and third counts sought judgments in favor of the infant plaintiff. The second and fourth counts sought judgment in favor of her mother, who sued *per quod*. The target of the first count was the Board of Education of Henry Hudson Regional High School (Board). It was contended in this count that the Board was negligent in that it and its agents, servants and employees

* * * so carelessly and negligently conducted said gymnastic activities that they called upon and directed the infant plaintiff herein to do and perform certain activities in an area poorly constructed for the intended use and carelessly and negligently failed to properly

supervise and control said activities and further failed to provide a safe place for participation in gymnastic activities by students and were negligent in such other and further respects as shall be shown at the time of trial.

The third count sought a judgment against Kimber, the gym teacher, on the grounds of negligence wherein it was contended that she

\* \* \* so carelessly and negligently conducted said gymnastic activities that she called and directed infant plaintiff herein to exercise in an area poorly constructed for the intended use and carelessly and negligently failed to properly supervise and control said activities and further failed to provide a safe place for participation in gymnastic activities by students and was negligent in such other and further respects as shall be shown at the time of trial.

We note that the Superintendent of Schools (who was acting as Principal at the school) was not joined as a defendant.

In response to special interrogatories, the six man jury brought in a unanimous verdict against the Board, a verdict of no cause for action in favor of Kimber by a vote of 5 to 1, and a damage verdict of $25,000 against the Board by a vote of 5 to 1.[1] Defendant Board appeals from the judgment entered against it. Plaintiffs do not appeal from the judgment in favor of defendant Kimber.

The trial court, on its own motion, removed the question of contributory negligence from the jury's consideration. The validity of that action is one of the issues before us. But the

---

[1]Curiously, the order for judgment entered on March 29, 1973, the day after an order denying a new trial was signed, "[o]rdered and adjudged that judgment be entered in favor of the plaintiffs, Charlene Dobbins, an infant by her Guardian ad Litem, Pauline Dobbins Whitney and Pauline Dobbins Whitney, individually, in the amount of Twenty-five Thousand Dollars ($25,000) plus interest and costs." We make no comment other than to observe this apparent irregularity and departure from that which was contended for in the complaint, i. e., compensatory damages for the infant and medical expense damages and loss of services for the parent, individually.

crucial question springs from the court's denial of defendant Board's motion for dismissal of the complaint on the ground that *N. J. S. A.* 18A:20–35 barred recovery against it. That statute (in effect at the time of the accident and since repealed) read as follows:

*Liability for injury to person from use of public grounds and buildings.*

No school district shall be liable for injury to the person from the use of any public grounds, buildings or structures, any law to the contrary notwithstanding.

It is incontrovertible that the injury to the infant plaintiff arose from the use of the school grounds. Indeed, in their brief, plaintiffs concede that if their claim is bottomed on a defect in design, construction, or maintenance of school property, the immunity statute applies. However, they assert that, when their claim "makes reference" to an "activity" being conducted on the property, the immunity statute is not a bar, citing *Estelle v. Bd. of Ed., Red Bank,* 26 *N. J. Super.* 9 (App. Div. 1953), modified on other grounds 14 *N. J.* 256 (1954). In that case the Appellate Division explored the question as to what the Legislature meant by the statutory language "injury from the use" of school property. The court cited several cases where the statute was applied so as to bar a claim. *Falcone v. Bd. Education, Newark,* 17 *N. J. Misc.* 75, 4 A. 2d 687 (C. P. 1939) (school girl hurt by a falling partition in washroom); *Kane v. Board of Education of Montclair,* 20 *N. J. Misc.* 7, 23 A. 2d 277 (Sup. Ct. 1941) (plaintiff fell down stairs which the Board had negligently failed to light); and see *Thompson v. Bd. of Ed., Millville,* 20 *N. J. Super.* 419 (App. Div. 1952), aff'd 11 *N. J.* 207 (1953) (plaintiff slipped on highly polished high school floor). See also *Terranella v. Union Bldg. and Construction Co.,* 3 *N. J.* 443, 447 (1950) (child killed while playing with heavy concrete pipes on public playground). And see application of the companion statute (*N. J. S. A.* 40:9–2) which granted immunity to counties and municipalities for

injuries "from the use" of public lands and buildings: *Fahey v. City of Jersey City*, 52 *N. J.* 103 (1968) (falls in playground areas of public parks); *Schwartz v. Stockton*, 32 *N. J.* 141 (1960) (fall in borough hall); *Zapf v. Bd. of Chosen Freeholders, Middlesex County*, 87 *N. J. Super.* 426 (App. Div.), certif. den. 45 *N. J.* 586 (1965) (fall on wet floor in courthouse); *Doerr v. Newark*, 128 *N. J. L.* 491 (Sup. Ct. 1942) (fall in City Hall as a result of negligent maintenance of the premises).

In *Estelle*, the court said:

When does the injury result from the use of the building? Where the alleged cause of injury was negligence in waxing the floor or failure to light the stairway or keep the washroom partition in good repair, the statute was deemed a protection. Let us say that the injury springs *from the use*, if it is caused *by any defect* in the design, construction, or *maintenance* of the structure, but not if it arises from activities carried on there — the x-ray operations. This is a very tentative classification, but it suffices for the present case. [Emphasis added].

While plaintiffs here disavow any claim that they charged defective maintenance of the parking lot, nevertheless the fact is that the injuries to the infant plaintiff, if her allegations are true, *were* caused by a defect in the maintenance of the parking lot. The statute therefore bars recovery against the board.

However, plaintiffs, citing *Titus v. Lindberg*, 49 *N. J.* 66 (1967), assert that the Board was liable for failure to properly supervise the area. But such lack of proper supervision was rested in the alleged default by defendant Kimber, the teacher in whose trust the students were placed. And she was found to be free of negligence by the jury. Therefore, no negligence, through her, can be imputed to defend Board.

There is some suggestion in the record — though no competent proof[2] — that the Superintendent of Schools

---

[2]The only testimony in this respect was by defendant Kimber that the Superintendent knew that the girls would run from time to time

was negligent in failing to reasonably safeguard the students in the use of the driveway and that his negligence is imputable to the defendant Board. There is no evidence that the Superintendent directed that the running be done on the driveway or that he knew that there was gravel on it which rendered it unsafe. Even if that were not so, in our view, the immunity statute would still bar recovery against the Board. The test under the statute is not what *negligence* caused the injury but whether the *injury* arose from the use of the property. That is what the statute says. Thus the cases of *Titus v. Lindberg, supra,* and *Jackson v. Hankinson and Bd. of Ed. of New Shrewsbury,* 51 *N. J.* 230 (1968), are inapposite here. There the injuries did not arise from the use of school property. By no stretching of language or logic can it be said that the injuries caused by negligently tossed paper clips arose "from the use" of the school property. In neither case was the immunity statute mentioned or implicated.

 But even if we divert our attention from the statute to alleged negligent supervision of the Superintendent, his duty or any violation thereof would be no different from that of the teacher who conducted the running exercises in the driveway. Since the jury found the teacher free from negligence it would be inconsistent to impute liability to the Board for the Superintendent's similar actions or failure to act. Further, any negligence of the Superintendent could only be imputed to the Board on principles of *respondeat superior.* That doctrine was not charged by the trial judge and there was no request that it be charged. Therefore liability of the Board cannot be predicated upon a theory that was not in the case.

 We understand the dissent to interpret the immunity statute as applying only when the school property involved is being put to its "ordinary" use and that it does not apply,

in the parking lot area, that he had walked there, and that he "knew what the area looked like." The latter was really an incompetent conclusion of the witness, if related to the gravel on the parking lot.

as the dissent says, when it is "being used for a purpose other than that for which it was primarily designed." This stress on the "ordinary" use of the school premises is not, in our judgment, a valid construction of the statute. It is not justified by the statutory language. Indeed one would have to insert the word "ordinary" as modifying "use" to warrant such interpretation. We have no more right to make such insertion than the court had the right to insert the word "public" as modifying "use" in *Schwartz v. Stockton, supra,* 32 *N. J.* at 153. To so construe the statute as meaning "ordinary" use amounts to judicial legislation, a function forbidden to us, as clearly set forth specifically as to this very statute in *Thompson v. Board of Ed., Millville, supra.* As in *Thompson,* we consider the words of the statute to be free of ambiguity or obscurity, clear and understandable, with the evident purpose of non-liability on the part of the Boards of Education under these circumstances. 20 *N. J. Super.* at 431.

Nor do we hold, as the dissent suggests, that we are willing to "confer immunity any time an accident occurs *upon* public property." Needless to say in both *Titus* and *Jackson,* the accidents occurred "upon" public property but, as we have said above, in neither case is the immunity statute implicated, because the accidents did not occur "from the use" of the property.

The dissent would likewise analogize the Board's duty to that of a shopkeeper to his customers to keep his premises reasonably safe for their purposes. It argues that if a shopkeeper owes such a duty to his customers a school board should have no less a duty. True, it may have been the part of wisdom to so provide. Indeed in applying its wisdom the Legislature later repealed the statute (*L.* 1972, *c.* 45, § 59:12–2), but at the time of this accident it was in effect. As was said by the Supreme Court, speaking through Justice Hall in *Schwartz v. Stockton, supra,* concerning the im-

munity statute then applicable to counties and municipalities, *N. J. S. A.* 40 :9–2 :

> It must be recognized, however, that here we are concerned with an explicit legislative declaration of public policy and not with a common-law principle. Our duty, therefore, in determining applicability in a particular situation, is to give effect to the statutory command to the full extent of the lawmakers' intent as we ascertain it, regardless of any view of the social desirability of the legislation. [32 *N. J.* at 148].

So, too, here. It is not for us to consider the statute as repealed before the Legislature took that action, nor is it within our power to hold it inapplicable when it was in fact in force.

As said in *Fahey v. City of Jersey City, supra*:

> To deny recompense to children injured on municipal playgrounds by reason of the nature or condition of the grounds may be a harsh result, but the result is dictated by *R. S.* 40 :9–2. The amelioration of this situation must therefore come from the legislative branch. [52 *N. J.* at 109].

For the foregoing reasons we reverse the judgment in favor of the plaintiff and direct that judgment be entered in favor of defendant Board of Education.

 Because of what we have said above it is unnecessary to consider defendant Board's further contention on appeal to the effect that the trial court erred in striking the defense of contributory negligence. Nevertheless, because of the possibility of further review, we state that we agree with the Board's contention. There was sufficient evidence to submit the issue of contributory negligence on the part of this 16 year old plaintiff to the jury.

FRITZ, J. A. D. (dissenting). Since the issue upon which the majority rests its reversal of the trial court is a narrow legal one, I restrain from supplementing the facts as they are viewed and commented upon by my brethren.[1] The only issue

---

[1] I cannot resist, however, a comment with respect to the majority's [third] *second* footnote, and the phrase to which it is attached. Were

of real moment in which we are in apparent disagreement is whether the immunity then provided by *N. J. S. A.* 18A:20–35 was available to defendant Board.

As narrow as this issue appears, and as succinctly as it may be stated, it requires a search for legislative intent. So I am of the judgment that the bland statement by the majority, "The test under the statute is not what *negligence* caused the injury but whether the *injury* arose from the use of the property," at worst oversimplifies the problem and begs the issue, and at best represents a satisfaction, which I do not share, that the word "use" is the alpha and the omega of that which the legislature intended. This court has already said, with respect to the statute, "It is not entirely clear what the Legislature meant by 'injury from the use' of a public building." *Estelle v. Bd. of Ed., Red Bank,* 26 *N. J. Super.* 9 (App. Div. 1953), modified on other grounds 14 *N. J.* 256 (1954). I have no doubt at all that were the Board intentionally and maliciously to hurt someone on its property with something like a bear trap, or to induce a known nonswimmer to jump into a ten-foot deep swimming pool during a school class, we would be quick to declare that it was not the intent of the legislature to immunize against responsibility for such activity, even though the premises were being "used" by the injured persons.

A search for legislative intent often reasonably starts with an attempt to divine what situation the legislature meant

I sitting as a fact finder, my view of the photographs said in testimony to represent the situation as of the day of the accident, coupled wtih the testimony, would leave me inescapably convinced that: (a) the parking lot was at no place level; (b) it was generously covered with an inordinate amount of gravel; and most significantly (c) that the superintendent, whose office which he visited daily was in the school building serviced by the parking lot, could not possibly have been unaware of the hazardous condition of the parking lot in terms of a place for girls running. If a reasonable inference from direct proof makes evidence competent in the sense that word is used by the majority, then we also disagree in this respect. But no matter; as the majority notes, it would have come to the same conclusion in any event.

to remedy, what evil to overcome. *Brewer v. Porch*, 53 *N. J.* 167, 174 (1969). Accordingly, I believe that legislative intent in the enactment of the statute with which we are concerned cannot be intelligently considered without some regard for the duty or duties of the Board. The exculpatory statute would be unnecessary were there not a duty for the breach of which an action might be maintainable absent the statute. There is a presumption against useless legislation. *Magierowski v. Buckley*, 39 *N. J. Super.* 534, 554 (App. Div. 1956).

Exploration of Board involvement from the standpoint of its duty to those who come upon its property suggests to me that with regard to the parking lot, the Board's duty (irrespective of statute, for the moment) cannot be unified or consolidated into one standard for all. Absent the statute, liability would unquestionably exist for damage suffered by those who were invited, came upon the parking lot to park, and were injured from negligence in the construction or maintenance of the parking lot. *Bates v. Valley Fair Enterprises, Inc.*, 86 *N. J. Super.* 1, 6 App. Div. 1964). I agree entirely with the majority that the statute was intended to protect the Board from liability thus imposed.

The duty owed to students by the Board is a different duty (leaving aside the parking of cars by students, a situation in no way involved here). It is "well-recognized in our State and elsewhere" that a Board owes at least the duty to "exercise reasonable supervisory care for the safety of students." *Titus v. Lindberg*, 49 *N. J.* 66, 73 (1967), and that it is accountable for injuries resulting from failure properly to discharge that duty. *Ibid.* Performance of this duty — said to include, as well, the duty "to take reasonable precautions for [the student's] safety and well-being" — is to be measured by "ordinary principles of negligence." *Jackson v. Hankinson and Bd. of Ed. of New Shrewsbury*, 51 *N. J.* 230, 234, 235 (1968). I believe this duty to embrace as well as obligation to provide a safe place to learn, and the employment of the care of the reasonable and prudent person in this regard. Certainly if a shopkeeper owes the duty to keep the premises

to which his customers come reasonably safe for their purposes (*Wollerman v. Grand Union Stores, Inc.,* 47 *N. J.* 426 (1966); *Krackomberger v. Vornado, Inc.,* 119 *N. J. Super.* 380 (App. Div. 1972)), a school board might be expected to do the same for the students who, for the most part, have no choice as to whether they attend school or not. As noted in *Jackson, supra,* "the relationship between the child and the school authorities is not a voluntary one but is compelled by law." (51 *N. J.* at 235.) That in such circumstances the "supervisory" duty of the Board extends at least to the perimeters here suggested seems to me beyond any question. *Cf. Titus, supra.*

The question is not whether such a duty exists. We know that such a duty exists because of the respectable precedent cited (although there may still be open ends with regard to the boundaries of the duty). The question really is whether the statute limits or immunizes against liability for breach of this duty in the same manner that we agree it minimizes against liability when the public grounds, buildings or structures are being used in the manner and for the purpose for which they were designed.

Nothing in the statute so suggests.

The proposition that this dissent contrives judicial legislation is only meritorious to those willing to accept the expansive definition of "use" forwarded by the majority, who give lip service to *Estelle, supra,* but disregard its crystal clear caveat as to the meaning of that word. Judicial legislation can as readily be charged to the majority in its apparent willingness to confer immunity any time an accident occurs *upon* public property. Were I to accept the position of the majority, related in terms of a gymnasium accident in a parking lot, I could not conceive of an accident occurring on public grounds that did not in some manner entail their "use."

I dissent because I am certain that the legislature did not intend such a far reach. Had they intended to confer immunity to the Board in all cases involving activities in or upon public grounds, buildings or structures simply because

of the locale of the occurrence, I think they would have said so more clearly. This is the sense of *Estelle* where the nature of the activity and its relationship to the purpose of the public structure is determinative. It is to be seen that in only one of the cases cited in *Estelle* and set forth by the majority and in none of the other "companion statute" cases cited by the majority was there evidence that the facility was being used for a purpose other than that for which it was primarily designed. The sole exception is in *Falcone v. Board of Education,* 17 *N. J. Misc.* 75, 4 *A.* 2d 687 (Com. Pl. 1939), a case which preceded *Estelle* by fourteen years, was not reviewed on appeal, and which, most significantly, involved voluntary activities by the injured party which were not required either by another party or in order to use the facility. I am persuaded that reliance by the majority upon the fact that "the injuries to the infant plaintiff * * * *were* caused by a defect in the maintenance of the parking lot" is insufficient to avoid the holding of *Estelle,* where the causative factor in terms of locale yielded to the nature of the activity.

Esoteric, and concededly primarily semantic arguments could be fabricated to support the position. For instance, it could be argued that the injury here does not result from the "use" of the premises, but rather from the failure of the Board to insist upon the use of a different and safe place. No statute immunizes from this breach of duty. But I think this would be recourse to sophistry. The precise question is: Did *N. J. S. A.* 18A:20–35 provide immunity from liability for the Board's breach of its duty to provide a safe place to learn? I would answer this in the negative.

Such a disposition, while derived wholly from legislative intent, is also consistent with a trend, based on sound social policy, acknowledged in *Jackson, supra,* 51 *N. J.* at 235, where the following appears:

* * * And although there has thus far been no express and complete disavowal of active wrongdoing terminology, there has been a shift towards frank recognition that municipal entities, along with all others, should justly be held accountable for injuries resulting

from their tortious acts and omissions under ordinary principles of negligence, except, as a matter of policy, in situations involving so-called discretionary determinations and the like, recently dealt with in *Amelchenko v. Freehold Borough*, 42 *N. J.* 541, *pp.* 549–550 (1964), *Hoy v. Capelli*, 48 *N. J.* 81, 87–91 (1966) and *Visidor Corp. v. Borough of Cliffside Park*, 48 *N. J.* 214, *pp.* 220–221 (1966), *cert.* denied, 386 *U. S.* 972, 87 *S. Ct.* 1166, 18 *L. Ed.* 2d 132 (1967). See *B. W. King, Inc. v. Town of West New York*, 49 *N. J.* 318, *pp.* 324–325 (1967) ; *Coleman v. Edison Tp.*, 95 *N. J. Super.* 600, 605 (*App. Div.* 1967).

I turn to whether the pleadings and proof in the case were sufficient to sustain a verdict against the Board upon the rule of law I support, and whether the charge of the court was competent to instruct the jury in this regard.

At the outset, I would obviate any suggestion that inculpation of the Board is a verdict inconsistent with exculpation of the teacher. The jury may well have believed that in the situation where they could have found on the evidence that the superintendent knew of the practice of using the parking lot as a gymnasium or athletic field, his silence in circumstances known to both him and the teacher was tantamount to an instruction to continue this long time practice, and that the teacher, therefore, conformed to the standard of reasonable and prudent conduct.

As a matter of fact, the case was submitted to the jury only on theories of independent negligence, rather than vicarious liability, for as the majority points out, *respondeat superior* was not even charged. In passing, I observe that this omission saves concern as to whether the verdict might be susceptible to a claim of inconsistency based on an inability to determine whether it was properly predicated on independent negligence of the Board or improperly predicated upon vicarious liability for the teacher's actions under the doctrine of *respondeat superior. Cf. Anderson v. Modica*, 4 *N. J.* 383, 393–395 (1950). A theory of vicarious liability was not available to the jury.

Both the pleadings and the pretrial contentions embodied in the pretrial order raised the issue of the Board's inde-

pendent negligence in its "failing to provide a safe place for participation in gymnastic activities" (the complaint) and "failing to provide a proper place for physical education" (the pretrial order).

I am satisfied that, the duty being that set forth above and no statutory bar to liability existing for reasons I have already detailed, the verdict has support in the credible evidence in the whole record (*State v. Johnson,* 42 *N. J.* 146 (1964), no manifest miscarriage of justice appears (*Dolson v. Anastasia,* 55 *N. J.* 2 (1969)), and we should be careful not to substitute our judgment for that of the jury (*Wytupeck v. Camden,* 25 *N. J.* 450, 466 (1957)).

The evidence below, if credited, proved (a) the existence of a hazard to running activities which should have been apparent to the reasonably prudent educator, or layman for that matter: the constant presence of a substantial amount of loose gravel on a slightly inclined macadam parking lot; (b) knowledge on the part of the school superintendent — the administrative head at the school — of that hazard and of the fact that "the girls" (students) would be required to run in that area during the ordinary course of instruction in their gym classes. I have no difficulty ascribing agency between the superintendent and the defendant board, nor in imputing the superintendent's knowledge to the Board. Providing only that this evidence reached the jury accompanied by careful instructions, I am well satisfied that the pleadings and proof were adequate to sustain the verdict.

In submitting the case to the jury, the judge charged, entirely properly, I think, and compatibly with the theory of the trial, that:

\* \* \* It is the duty of the Board of Education to exercise such care for the safeguarding of its students while in attendance upon the school property or classes during regular school hours from injuries that were reasonably foreseeable as would have been exercised by the reasonably prudent person under the proven circumstances.

Now, in order for you to charge the Board of Education, of course, with negligence in this case, it will be necessary that knowledge by the Board of Education of the use of this driveway and parking lot

by the class and the existing conditions be established by the preponderance, or such circumstances be shown by such proof that in the exercise of reasonable care would have caused it to be aware of the said use or such as would have caused a reasonably prudent person to have been aware of such use. * * *

I conclude that a duty existed, there was proof of its breach, the duty was adequately described to the jury in the charge, and the burden of proof was correctly assigned. It follows that the verdict is, in my opinion, sound.

However, it is also clear to me that, in view of the nature of the hazard — the very fact which implicates the Board — it was error to remove the issue of plaintiff's contributory negligence. The jury should have been required to decide whether plaintiff's conduct, in the face of this fairly obvious and apparent danger, was that of a reasonable and prudent person similarly circumstanced.

Accordingly, I would reverse and remand for a new trial. At first constrained to vote for a new trial only on the issue of the infant plaintiff's contributory negligence, I am now satisfied that in all fairness to both parties the Board's negligence and the infant plaintiff's negligence should be admeasured in the same trial and on the same testimony. Therefore I would vacate the judgment entered. No appeal having been taken by plaintiff against the dismissal of the teacher's action, I would limit the new trial to plaintiff's asserted cause of action against the Board.