134 N.J. Super. 400 (1975)
341 A.2d 365
BETTY WUETHRICH, INDIVIDUALLY AND AS ADMINISTRATRIX AD PROSEQUENDUM FOR THE HEIRS-AT-LAW OF JOHN WUETHRICH, DECEASED, PLAINTIFF,
v.
JOHN DELIA AND TOWNSHIP OF BERKELEY HEIGHTS, A MUNICIPAL CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 27, 1975.
*404 Mr. Francis H. Scalessa, attorney for plaintiff (John Anthony Lombardi, attorney).
Mr. Francis J. Beyrent, attorney for defendant Township of Berkeley Heights (Schenck, Price, Smith & King, attorneys).
*405 Mr. Robert C. Thelander, attorney for defendant John Delia (Mantel & Thelander, attorneys).
DREIER, J.D.C., Temporarily Assigned.
Defendant Township of Berkeley Heights has moved for judgment seeking dismissal of plaintiff's complaint as to it for failure to state a claim upon which relief can be granted.
Although some of the allegations in the complaint are disputed by both defendants, for purposes of this motion we must take them as true and accord the benefit of all favorable inferences to plaintiff. Plaintiff alleges: On several occasions during the afternoon and evening of February 9, 1974 notification was given to the police department of the township that defendant John Delia was menacing with a firearm certain persons within a short distance of the Berkeley Heights police headquarters. The police department made no response to these warnings. Less than 12 hours later, in the early morning of February 10, 1974, John Delia in that same area willfully, wantonly and maliciously shot decedent in the head with a gun, killing him instantly. John Wuethrich left as survivors his wife (plaintiff herein) and three infant children.
Plaintiff filed the appropriate notice of claim against the defendant township on April 10, 1974, and more than six months have elapsed since the filing of said notice. Plaintiff, individually and as administratrix ad prosequendum for the heirs-at-law of decedent, brought suit pursuant to N.J.S.A. 59:8-8 on February 5, 1975, within two years of decedent's death, demanding judgment against John Delia for damages and against the township for compensatory damages. Plaintiff alleges that decedent's death was caused not only by the wrongful act of defendant Delia but also by the neglect, failure and default of the township police department to carry out its duty (1) to "apprehend and disarm" defendant after receiving warning of his armed threats of imminent personal harm, and (2) to take "appropriate action * * * *406 to disarm [defendant] * * * file a Complaint against him or otherwise confiscate the firearms in his possession."
Defendant township in its motion relies entirely upon three statutes. For convenience, they are reprinted here in full.
N.J.S.A. 59:2-4. Adoption or failure to adopt or enforce a law. A public entity is not liable for an injury caused by adopting or failing to adopt a law or by failing to enforce any law.
N.J.S.A. 59:5-4. Failure to provide police protection. Neither a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service.
N.J.S.A. 59:5-5. Failure to make arrest or retain person arrested in custody. Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody.
All were effective as of 1972 and none has as yet been construed by New Jersey courts. This court therefore has an obligation to consider them in relation to the special facts of this case and in light of the specific policy considerations expressed in the New Jersey Tort Claims Act of 1972; New Jersey case law prior to this enactment dealing with these issues, as well as subsequent case law in relevant areas although not specifically dealing with construction of the statutes; and related case law in other jurisdictions construing municipal immunity.
Initially we must note the legislative declaration expressed in N.J.S.A. 59:1-2, which states in part that:
* * * the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein.
This is more generally expressed again in N.J.S.A. 59: 2-1, stating that a public entity is not liable for an injury arising out of an act or omission except as otherwise provided *407 by the act. The comment to this provision emphasizes that its purpose is to allow some degree of predictability so that municipalities may estimate their insurance needs. The suggested approach is
* * * whether an immunity applies and if not, should liability attach. It is hoped that in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities. [Emphasis in original]
N.J.S.A. 59:2-2 states that the public entity is generally liable for injury proximately caused by an act or omission of a public employee within the scope of his employment. The broad exceptions follow. N.J.S.A. 59:2-3, "Discretionary Activities," requires quotation in full:
a. A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity;
b. A public entity is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature;
c. A public entity is not liable for the exercise of discretion in determining whether or to seek or whether to provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services;
d. A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public entity was palpably unreasonable. Nothing in this section shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial functions.
The extensive comment to this provision explains that New Jersey (and other states such as California) protects from challenge "certain high-level decisions calling for the exercise of official judgment or discretion." The examples given in subsection (c) illustrate what areas must remain free from interference. Subsection (d) traces such high-level decisions down to the area of immediate contact with the citizenry, *408 where one approaches the gray area encompassing activities reasonable persons might categorize as either low-level discretionary or ministerial. Then once a public entity does act, "when it acts in a manner short of ordinary prudence, liability could be judged as in the case of a private party." Fitzgerald v. Palmer, 47 N.J. 106, 109 (1966).
The new act is equally applicable to any county, municipality, public authority, etc., in the State, N.J.S.A. 59:1-3, and its beneficent policy is exemplified by recent cases which stress that what is important is the substance of notice provisions to the State, not technical niceties. Dambro v. Union County Park Comm'n, 130 N.J. Super. 450 (Law Div. 1974); Markey v. Skog, 129 N.J. Super. 192 (Law Div. 1974). Both of these cases show a careful concern for tempering the effects of unanticipated economic liabilities (which must, in the end, be paid by the public at large through taxes) with the qualities of basic fairness to the individual alleging harm for which the State was a proximate cause.
This court finds no recent New Jersey case (with the possible exception of Dobbins v. Henry Hudson Reg. High Bd. of Ed., 133 N.J. Super. 13 (App. Div. 1974), aff'd 67 N.J. 69 (1975)  as qualified by its special jury verdict situation and particular statutory wording) manifesting an intention to hide public wrongdoing, whether by act or omission, behind the ancient negative facade of "the King can do no wrong." Today the policy expressed by the Tort Claims Act is to consider: (1) Was this, in fact, a wrong? (2) Was the government responsible for it? If so, (3) was it the kind of wrong for which all the taxpayers should be held liable? In order to avoid the trap aptly phrased in Amelchenko v. Freehold, 42 N.J. 541, 550 (1964), "It cannot be a tort for government to govern," we must examine the distinction between discretionary and ministerial activity.
Judicial construction of the California Tort Claims Act enacted in 1963 (Cal. Gov't Code § 810 et seq.), while not binding on New Jersey courts, may offer guidance. California's *409 act also provides immunity to discretionary and not to ministerial duties.
Discretionary activity * * * is that related to basic policy decisions, or that activity sometimes characterized as the "planning" as opposed to the "operational" level of decisionmaking. Ramos v. Madera County, 4 Cal.2d 685, 94 Cal. Rptr. 421, 426, 484 P.2d 93, 99 (1971).
The actor must not only have discretion but also must act in the exercise of that discretion. "Immunity for `discretionary' activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government. Accordingly, to be entitled to immunity the state must make a showing that such a policy decision * * * took place * * *." Ramos, supra, at 426, fn 7, 484 P.2d at 98. California case citation omitted.
A pre-act New Jersey case dealing with this distinction in practice is Bergen v. Koppenal, 97 N.J. Super. 265 (App. Div. 1967), aff'd 52 N.J. 478 (1968). There, after police had notice of a potentially hazardous condition caused by a defective traffic light on an area of road over which that township had no possessory control, liability was found.
[W]e think it fair to say that a duty may be found if a police officer learns of an emergent road condition which is likely not to be observed by a motorist and which holds an unusual risk of injury. In such circumstances the municipality must act reasonably to guard the traveler. * * * [52 N.J. at 480]
This was found not to be the type of discretionary act or basic governmental policy decision calling for immunity. However, the municipality was invited to show that where there were competing demands, the jury could not disagree with the decisions made by the police department, except if they were found palpably unreasonable. Cf. N.J.S.A. 59: 2-3(d), quoted earlier. Thus, the burden of explanation is expected to shift back and forth in accordance with the peculiarities of the case. The jury in Bergen could properly have considered the competing demands problem only because this was the type of circumstance wherein the municipality could have reasonably been found to have a duty to act.
*410 Another New Jersey interpretation of this distinction is found in Logan v. No. Brunswick Tp., 129 N.J. Super. 105 (App. Div. 1974). Although the wording of the decision on this pre-act injury is that "Police and consequently their municipal employer may be held liable for accidents proximately resulting from negligent signalling of traffic," (citing Bergen v. Koppenal, supra, among others), in fact the criticism of the court was that the police had made the negligent ministerial decision to order resumption of traffic in an area of severely icy conditions where several accidents had just taken place, without waiting for the plaintiff tow truck operator to reach a place of safety. The jury's rejection of a claim of municipal immunity was affirmed by the Appellate Division.
As noted earlier, plaintiff here alleges that (a) the police had received warnings of threats with firearm near police headquarters, (b) the police ignored the warnings, and (c) the shooting followed within 12 hours thereafter by the named killer in the stated location. Under these alleged circumstances does an immunity apply? If an immunity applies, it must be because the police decision to ignore the warnings was a high-level discretionary act (not alleged by the township), or, if it was a ministerial act enveloped with some discretion, then the liability established by the act may be subject to one of the claimed express statutory immunities of the public entity (N.J.S.A. 59:2-1(b); 59:5-4; and 59:5-5).
Police officers have the right, indeed the duty, to investigate seemingly criminal behavior or activity. State v. Royal, 115 N.J. Super. 439, 441 (App. Div. 1971); Anderson v. Sills, 56 N.J. 210, 222 (1970). When an officer recognizes apparent criminal activity, he has the right to detain the persons involved in such activities and to make inquiries of them. State v. Gray, 59 N.J. 563, 567-568 (1971); State v. Dilley, 49 N.J. 460, 467-468 (1967). He may detain a person for questioning, upon reasonable suspicion *411 based upon the totality of the circumstances. State v. Tanzola, 83 N.J. Super. 40, 46-47 (App. Div. 1969). When a citizen informant reports criminal activity, probable cause may be easily satisfied to warrant an investigation.
The imputation of reliability with respect to information given by an ordinary citizen, and the founding of probable cause for effective police action based on such cooperation and concern are particularly appropriate in a context where the reactive measures taken are for the limited purpose of neutralizing a dangerous situation. [State v. Lakomy, 126 N.J. Super. 430, 436 (App. Div. 1974)]
Based upon the above, this court finds that once the police had received warnings as alleged by plaintiff, their obligation to investigate was clear. It was not discretionary but ministerial.
Do the restrictive police immunity statutes cited by defendant township somehow provide an automatic protection against ministerial neglect? Statutes should be read in pari materia when the statutes in question were enacted during the same session or went into effect at the same time, Mimkon v. Ford, 66 N.J. 426 (1975); all the more so when the sections are part of the same act. Despite the language of N.J.S.A. 59:5-4, 59:5-5, and 59:2-4 stating that, respectively, police are not liable for failure to arrest or to provide any or sufficient police protection or to enforce a law, these sections must be read in pari materia with N.J.S.A. 59:2-3(d), application of resources must not be palpably unreasonable, and with N.J.S.A. 59:2-2, the public entity is liable for injury proximately caused by an act or omission of the employee within the scope of his employment. This court construes N.J.S.A. 59:2-2 to hold the public entity clearly liable for acts or omissions of a low-level discretionary or ministerial nature.
Despite apparent absoluteness, an unreasonable construction of a statute will be rejected when a reasonable reading may be found. In re Brennan, 126 N.J. Super. 368 (App. Div. 1974); State v. Campobasso, 125 N.J. Super. *412 103 (Law Div. 1973). One can easily imagine fully justifiable applications of the absolute police immunity statutes cited by the township. Under N.J.S.A. 59:5-5, for example, neither the public entity nor the employee is liable although police may have been given a precise description of a suspect yet were unable to apprehend him before he committed another crime; or if one who has been arrested has escaped. Under N.J.S.A. 59:5-4, neither the public entity nor employee is liable despite the decision of the governing body of a large but sparsely populated township to employ no police of its own, or to employ only a few policemen  although this may delay response to alarms. Yet under N.J.S.A. 59:2-3 (d) there may be a challengeable grant of the policy-making discretion given only to the public entity when senior police officials determine, for example, to reduce personnel on a given shift or in a certain area of the community; they may be required to justify that decision by demonstrating competing demands for service.
Although only the public entity is stated in N.J.S.A. 59:2-4 as not being liable for injury caused by failure to enforce any law, any liability for injury caused by the employee's acts or omissions may, at times, be borne under the principle of respondeat superior, as evidenced by the last sentence in N.J.S.A. 59:2-3(d). In police work we must now consider the lower-level discretionary area which tends to merge with ministerial-operational duties  those of the "man on the beat." On this individual level, some discretion must still exist. An officer may refuse to arrest an alleged offender if, in the exercise of his discretion, he does not believe an offense has occurred or if other police considerations so dictate. But in such a situation this discretion must actually be exercised and claimed by way of defense. In the case at bar the township remains silent. A fair reading of the three sections cited by the township indicates absolute immunity for higher-level discretionary acts, and not for those of individual police officers whose actions *413 may be partly discretionary and partly of a ministerial nature (as defined in the comment to N.J.S.A. 59:2-3).
Plaintiff here seemingly bases her complaint against the municipality upon the township's failure to prevent the shooting by arresting or disarming Delia. We have discussed above the possibly discretionary nature of these bases of this complaint. Nevertheless, R. 4:42-6 says that a party shall receive the relief to which he (she) is entitled even though he has not demanded such relief in the pleadings. In that spirit this court must consider that a jury could find that the police owed a ministerial duty to decedent and to the community to take reasonable steps at least to investigate and determine whether it was necessary to protect persons from foreseeable criminal acts committed by third persons.
Thus, we are not here concerned with the failure of the police to apprehend or to arrest defendant Delia in the sense of taking him into custody for the purpose of holding or detaining him to answer a criminal charge  physically seizing him  as arrest and apprehension are defined in Black's Law Dictionary (4 Ed., 1951). We are concerned with the failure of the police to investigate the complaint duly received at headquarters about an armed man (with name and location reported) in the immediate vicinity of the police headquarters, making threats of imminent harm to identified persons.
As for what a reasonable response to receipt of a warning of firearm threat might be, we may consider Corridon v. Bayonne, 129 N.J. Super. 393 (App. Div. 1974). It dealt with responsibility of the city for the death of victim Corridon shot by an intoxicated off-duty municipal police officer. While the thrust of the opinion was that the act of an off-duty officer should not bind the city under respondeat superior, the city could be found primarily negligent, the court held, for permitting the arming of an officer it knew or should have known was often intoxicated in public places. The court noted:
*414 It is clear that the hazard of firearms is so extraordinarily great that a municipality has a plain duty of care in its supervision of those whom it arms. McAndrew v. Mularchuk, 33 N.J. 172 (1960). If a municipality is required `to use care commensurate with the risk' in providing adequate training and experience in the proper handling and use of weapons, as in McAndrew, it certainly is no less responsible for appropriate action when situations unreasonably increasing the already great hazard become known to it. The duty is one to abate such an extraordinary risk if in related circumstances danger to others is reasonably to be perceived. [129 N.J. Super. at 397; citing cases]
In Harris v. State, 61 N.J. 585 (1972), dealing with a pre-act injury, prison officials were found not liable where one prisoner assaulted another, where there had been no prior warning to any of the officials of the impending attack nor had they been made aware of any circumstances calling for special precautions on their part. All the cases cited therein refer to no liability having been found where there was no warning of danger.
The fact that the risk of harm to the plaintiff was attributable to voluntary activity of others not under the control of the defendant does not of itself preclude liability if the harm by human intervention was foreseeable and a reasonable man so situated would take precautions to prevent it. * * * The criminality of the activity is but one circumstance in the foreseeability of the harm. [Braitman v. Overlook Terrace Corp., 132 N.J. Super. 51, 55 (App. Div. 1974); citations omitted]
This court concludes that once clear warning of a threat to take life was received by the police, the police had a ministerial and operational duty to investigate, and a jury may find liability on the part of the public entity for omission to so investigate. Alternatively, the decision not to investigate, while arguably of a low-level discretion, may after a consideration of competing demands be found by a jury to have been palpably unreasonable. If the police understood the warning and chose not to respond, the burden shifts to them to come forward and explain why competing demands prevented them from carrying out their duty to investigate. *415 N.J.S.A. 59:2-3(d) clearly recognizes a public demand for accountability by public entities.
Defendant township's motion for judgment for failure to state a claim upon which relief can be granted, R. 4:6-2(e), is denied.