155 N.J. Super. 42 (1977)
382 A.2d 98
ROBERT D. CADMUS, PLAINTIFF,
v.
LONG BRANCH BOARD OF EDUCATION AND INDUSTRIAL ASSOCIATES, A PARTNERSHIP, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 21, 1977.
*44 Mr. Richard D. Schibell for plaintiff (Messrs. Shebell & Schibell, attorneys).
Mr. Albert C. Lisbona for defendant Long Branch Board of Education (Messrs. Dwyer, Connell & Lisbona, attorneys).
AIKINS, J.S.C.
This motion for summary judgment by defendant Long Branch Board of Education (board) stems from an action against it and codefendant Industrial Associates (Industrial) for personal injuries sustained by plaintiff while he was a Long Branch Senior High School student and a participant in that school's Cooperative Industrial Education Program.
On December 10, 1974 plaintiff, then a 17-year-old senior, was engaged in the program under the sponsorship of codefendant Industrial and was employed in the repair of the roof of a building owned by it when he lost his balance and fell to the ground some 35 feet below, sustaining substantial injuries and resultant medical expenses.
The abovementioned program is defined in N.J.A.C. 6:42-2.1 as "a cooperative work-study program of vocational education for persons who, through a cooperative arrangement between the school and employers, receive instruction, including required academic course and related vocational instruction, by the alternation of study in school with a job in any occupational field * * *."
Plaintiff alleges a breach of duty by defendant board in that it failed to adhere to standards of safety for construction and maintenance work established by the Federal Occupational *45 Safety and Health Administration and adopted by the New Jersey State Board of Education for its vocational cooperative programs.
Defendant board asserts its immunity under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., contending that it is immunized from liability for failure to supervise the vocational activities conducted on the private property of codefendant Industrial.
As was held in English v. Newark Housing Auth., 138 N.J. Super. 425, 428 (App. Div. 1976), the terminology of the Tort Claims Act makes it obvious that the goal of the Legislature was to reestablish immunity for all governmental subdivisions within its definition of "public entity," a description clearly encompassing defendant board. See N.J.S.A. 59:1-3. Burg v. State, 147 N.J. Super. 316, 320 (App. Div. 1977), characterized the scope of immunity as that which was "all inclusive within that definition except as otherwise provided by the Act." N.J.S.A. 59:2-1.
Plaintiff here seeks to found defendant board's liability upon certain language in New Jersey and federal administrative regulations. Specifically, he refers to N.J.A.C. 6:42-2.2, which provides that "Each program [i.e., vocational cooperative program] will provide on-the-job training that * * * employs student-learners in conformity with Federal, State and local laws and regulations * * *," and also N.J.A.C. 6:43-2.3(b)(3), which contains the requirement that "Student assignments shall assure * * * (iv) Compliance with safety standards; (v) On-the-job supervision; and (vi) Compliance with appropriate State and Federal Laws and regulations."
Plaintiff next points to defendant board's alleged failure to adhere to the federal regulations issued by the Occupational Safety and Health Administration, namely, "Safety and Health Regulations for Construction," § 1926.105, calling for the utilization of safety nets for work places more than 25 feet above the ground. Thus plaintiff submits that defendant board was negligent in failing to implement the *46 above terms of the federal safety regulations and in not providing adequate supervision and control of both the activities of defendant Industrial and the job site at which plaintiff worked.
Plaintiff, however, is barred from recovery against defendant board for the asserted failure to enforce the aforementioned state and federal regulations and failure to inspect the private property of defendant Industrial by two provisions of the Tort Claims Act, i.e., N.J.S.A. 59:2-4 and 59:2-6, which are as follows:
N.J.S.A. 59:2-4. Adoption or failure to adopt or enforce a law.
A public entity is not liable for an injury caused by adopting or failing to adopt a law or by failing to enforce any law.[1]
N.J.S.A. 59:2-6. Failure to inspect, or negligent inspection of, property.
A public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property; provided, however, that nothing in this section shall * * * exonerate a public entity from liability for failure to protect against a dangerous condition as provided in chapter 4.[2]
Plaintiff nonetheless argues that notwithstanding any specific enactments, defendant board is liable for its negligent omissions because the state and federal safety regulations create duties of a low-level discretionary or ministerial nature, citing McGowan v. Eatontown, 151 N.J. Super. 440 (App. Div. 1977), and Wuethrich v. Delia, 134 N.J. Super. 400 (Law Div. 1975).
McGowan involved a traffic accident apparently caused by *47 the accumulation of ice on a portion of a state highway. The facts considered on that summary judgment application reveal that the State on numerous prior occasions had been alerted to the development of this emergent dangerous condition in the winter months.
In Wuethrich the municipal police were informed several times during an afternoon and evening that an armed individual was menacing certain persons within a short distance of police headquarters. The police made no attempt whatsoever to investigate, and less than 12 hours later in that same area defendant Delia wantonly shot plaintiff's decedent.
McGowan and Wuethrich are the progeny of Bergen v. Koppenal, 52 N.J. 478 (1968), wherein our Supreme Court held (before enactment of the Tort Claims Act) that in a situation in which a township had actual notice of the breaking loose of a traffic light, thereby causing the dangerous misdirection of a traffic signal, and failed to take prompt remedial action (a collision thereafter occurring), the entity would be liable if the emergent condition holds an unusual risk of injury and if the omission to act were predicated upon a palpably unreasonable judgment in the allocation of its resources and personnel.
Therefore, McGowan and Wuethrich are inapposite on two grounds. Firstly, both cases stand for the proposition that the Tort Claims Act does not permit liability to be imposed upon a public entity for the negligent execution of its duties in the absence of tangible facts demonstrating the requisite actual or constructive awareness of the danger on the part of the entity. In the instant case the record is void of any notice to defendant board of the potential hazard to plaintiff. On the contrary, plaintiff's answers to interrogatories and his deposition indicate that he never informed the Cooperative Education Coordinator for defendant board that he would be working on the roof of the private property of codefendant Industrial. Secondly, of considerable significance is the location of the hazardous condition in McGowan, i.e., upon public property. See also, Meta v. Cherry Hill Tp., 152 *48 N.J. Super. 228 (App. Div. 1977). As previously mentioned, N.J.S.A. 59:2-6 immunizes a public entity for the failure to inspect or the negligent inspection of private property. It is only with respect to public property that the Tort Claims Act evinces any legislative intention that there be imposition of liability for omissions in inspection (or for negligent inspection)  and then only upon a showing of palpable unreasonableness in the governmental unit's decision "to act or not to act in the face of competing demands." Comment to N.J.S.A. 59:4-2.
Plaintiff additionally contends that 20 U.S.C.A. 1353(a) sets forth a mandate that state vocational cooperative programs must conform to all federal regulations as a prerequisite to funding. Plaintiff, however, misconstrues this regulation since it merely requires the promulgation by New Jersey of "policies and procedures to be used by the State board in establishing cooperative work-study programs" in order to provide for, among other things, the establishment of ancillary services and activities to enhance the value of the programs (e.g., pre-service and in-service training for teacher coordinators, establishment of priority funding for those programs in areas of high youth unemployment, provision for supervision and curriculum materials). Thus, this federal statute, by a fair reading of its terms, does not impose any obligation upon the individual school boards (as opposed to any duty incumbent upon a state board) to implement specific regulations, state or federal, as a sine qua non for federal financial assistance.
Plaintiff also submits that by virtue of the doctrine enunciated in Jackson v. Hankinson, 51 N.J. 230, 234 (1968), any liability imputed to defendant board should be evaluated according to ordinary principles of negligence. However, this reliance upon Jackson is misplaced, for an analysis of the entire Tort Claims Act, passed four years after the opinion in Jackson, reveals no legislative intention to incorporate an exception to immunity for the activities of boards of education or public school districts. On the other hand, *49 when the Legislature reenacted statutory immunity in 1972, it carved out a delimited area in which, under certain circumstances, a public entity would be liable: to wit, Chapter 4. "Conditions of Public Property  Liability of the Public Entity" (N.J.S.A. 59:4-1 through 59:4-9, inclusive). In fact, N.J.S.A. 59:4-4 ("Failure to Provide Emergency Warning Signal") represents the codification of Bergen, supra. In light of the foregoing case law and legislative history, the conclusion is inescapable that the Tort Claims Act bars the employment of ordinary principles of negligence for the purpose of evaluating the liability of defendant board.
Consequently, the aforementioned immunity provisions of the Tort Claims Act, in combination with the case law which has delineated only minimal exceptions to the reenactment of sovereign immunity for public entities (exceptions which may be defined as those involving emergent high risk perils to the public of which the governmental entity has actual or constructive notice), dictate the conclusion that defendant board is not liable.
A ruling in favor of plaintiff would place upon the school districts of this State the onerous fiscal burden of (1) undertaking a comprehensive plan for the evaluation of innumerable sites at which private construction firms participating in the vocational cooperative programs would be employed, and (2) making substantial expenditures in time, resources and personnel to assure a high degree of safety at those locations. The imposition of such a novel and weighty duty of supervision and safety maintenance of private properties would indeed be illogical when viewed against the background of statutory immunity for school districts and the lack of any plan enacted by the Legislature to preserve the financial integrity of the educational system. See National Spring Co. v. Pierpont Associates, Inc., 146 N.J. Super. 63, 67-68 (Law Div. 1976).
Defendant board's motion for summary judgment is therefore granted.
NOTES
[1] It is generally recognized that within their allotted sphere, rules and regulations of a state administrative agency, duly promulgated under properly delegated powers, have the force and effect of law. State v. Atlantic City Electric Co., 23 N.J. 259, 270 (1957); Rutgers Council v. N.J. Bd. of Higher Ed., 126 N.J. Super. 53, 64 (App. Div. 1973). See N.J.S.A. 18A:4-15
[2] Chapter 4 of the Tort Claims Act outlines the limited liability of public entities for the condition of public property.