466 A.2d 1060

Wilfredo MELENDEZ, a minor by his parents and natural guardians, Justino MELENDEZ and Georgina Melendez, and Justino Melendez and Georgina Melendez in their own right, Appellants,

v.

CITY OF PHILADELPHIA.

Superior Court of Pennsylvania.

Argued Jan. 20, 1983.

Filed Oct. 7, 1983.

Mark Brownstein, Philadelphia, for appellants.

Jill A. Douthett, Assistant City Solicitor, Philadelphia, for appellee.

Before CAVANAUGH, ROWLEY and HOFFMAN, JJ.

ROWLEY, Judge:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County which granted summary judgment in favor of the appellee, City of Philadelphia, and against the appellants, Wilfredo Melendez and his parents Justino and Georgina Melendez.

On September 12, 1976, fifteen year old Wilfredo Melendez was shot in the left eye by his neighbor, Edward Dietzel, during a racial confrontation between the residents of the neighborhood where he and Dietzel both lived in the 2600 block of North Waterloo Street, Philadelphia. A complaint in trespass was filed on October 25, 1977, by the minor appellant and his parents against the City of Philadelphia on the theory that the minor appellant's injuries were caused by the nonfeasance of the City's police department and human relations commission, both of which were al-

leged to have failed to take sufficient and adequate measures to safeguard the lives of the citizens of the neighborhood after having been apprised of racial problems in the community and dangers occasioned thereby to the residents.[1] On January 6, 1978, the City filed a motion for summary judgment on the ground that it owed no special duty to minor appellant or his neighbors to provide them with police protection beyond that which is owed to the public in general, and that, consequently, it could not be held liable for minor appellant's injuries. The City's motion was denied on March 31, 1978, per Judge SILVERSTEIN. Minor appellant and his parents were subsequently deposed, and reports prepared by the human relations commission about the time of the incident regarding the racial situation in the neighborhood were made part of the record. In the summer of 1981, the City once again moved for summary judgment arguing anew that the facts viewed in the light most favorable to appellants failed to establish a special duty of protection owed by the City to minor appellant. After review, the trial court per Judge BRAIG entered an order on November 19, 1981, granting the City's request for summary judgment.[2] This appeal followed. We affirm.

1. In 1973, our supreme court abrogated the judicially created doctrine of governmental immunity making it possible for governmental units, such as the City of Philadelphia, to be sued for the torts of their servants. In 1978, the legislature enacted the Political Subdivision Tort Claims Act, Act of November 26, 1978, § 101 et seq., formerly 53 P.S. § 5311.101 et seq. (Supp.1981), presently 42 Pa.C.S. § 8541 et seq., which reinstated the immunity of political subdivisions from suit, except in eight areas of activity. The case at hand arose during the five and a half year period between the supreme court's abrogation of governmental immunity and the legislature's reinstatement of the same. The fact that no governmental immunity exists does not, however, concede the justice of the tort claim. The basis of the city's liability still rests upon a showing of fault.

2. We note that, ordinarily, a trial judge should not place himself in the position of overruling a decision by another judge of the same court in the same case. *Duffy v. Gerst,* 286 Pa.Super. 523, 429 A.2d 645 (1981). However, where, as in this case, new evidence is placed on the record during the interim between the first trial judge's ruling and the second trial judge's reassessment, it is not improper for the second trial judge to overrule the prior decision of his colleague in light of that new evidence. *Accord: Commonwealth v. Eck,* 272 Pa.Super.

Our scope of review when considering a grant of summary judgment was recently reiterated by this Court in *Juarbe v. City of Philadelphia*, 288 Pa.Super. 330, 431 A.2d 1073 (1981):

> In our review of this appeal from the grant of summary judgment, our judicial role has been clearly defined. It was well-stated by Judge Jacobs in *Bollinger v. Palmerton Area Communities Endeavor, Inc.*, 241 Pa.Super. 341, 350, 361 A.2d 676, 680 (1976):
>
>> It is well established that we can sustain a summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *The record must be examined in the light most favorable to the nonmoving party.* The court must accept as true all well-pleaded facts in the plaintiff's ... pleadings, giving the plaintiff ... the benefit of all reasonable inferences to be drawn therefrom. Finally, a summary judgment should be granted only when the case is clear and free from doubt. Moreover, in passing upon a motion for summary judgment, *it is no part of our function to decide issues of fact but solely to determine whether there is an issue of fact to be tried* and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment. (emphasis in original; citations omitted)
>
> See also Pennsylvania Rule of Civil Procedure 1035, 42 Pa.C.S.A., on the subject of summary judgments.

*Id.*, 288 Pa.Superior Ct. at 334–5, 431 A.2d at 1078.

On appeal, appellants contend that material facts are in issue as to 1) whether the city is liable for acts of non feasance of its police officers where those officers were aware of the danger to minor appellant and failed to patrol

406, 409, 416 A.2d 520, 522 (1979); *Sherman v. Yoder,* 59 Pa.Cmwlth. 430, 433, 430 A.2d 347, 349 (1981).

the neighborhood or properly quell the disturbance which led to minor appellant's injury, and 2) whether the city had a "special relationship" with the minor appellant which gave rise to a *special duty* of protection.

■ Before we can address the question of whether the City is liable for the acts of nonfeasance of its police officers, arguably an issue of first impression for this Court, we must first determine whether the police had a duty to act in this instance.[3] Generally, it is acknowledged that there is no duty resting on a municipality or other governmental body to provide police protection to any particular person. *Chapman v. City of Philadelphia*, 290 Pa.Super. 281, 434 A.2d 753 (1981); 57 Am.Jur.2d § 251; *see also Turner v. United States*, 248 U.S. 354, 357–58, 39 S.Ct. 109, 110, 63 L.Ed. 291 (1919). However, where the circumstances establish a "special relationship" between the parties, then an exception to the general rule will be found and an affirmative duty to act will be imposed. In *Chapman, supra,* a case which also involved the City of Philadelphia, this Court recognized this "special relationship" exception, stating:

> The duty of the City of Philadelphia to provide police protection is a public one which may not be claimed by an *individual* unless a special relationship exists between the city and the *individual*. *Berlin v. Drexel University*, 10 Pa. D. & C.3d 319 (1979); 46 A.L.R.3d 1084. A special relationship is generally found to exist only in cases in which an *individual* is exposed to a special danger and the authorities have undertaken the responsibility to provide adequate protection for *him*. *Berlin v. Drexel, supra;* 46 A.L.R.3d 1084. (Emphasis supplied)
> Id., 290 Pa.Super. at 283, 434 A.2d at 754.

Consequently, whether the City is liable in this case to minor appellant for the nonfeasance of its police force is

3. "[F]or 'nonfeasance' it is necessary to find some definite relation between the parties ... of such a character that social policy justifies the imposition of a duty to act." W. PROSSER, THE LAW OF TORTS § 56 (4th ed. 1972).

entirely dependent on whether the minor appellant has shown that a "special relationship" existed between him and the police. Our review of the record convinces us that minor appellant has not met this burden and that *Chapman, supra,* controls.

Appellants argue on appeal that the general duty owed the public was narrowed into a "special relationship" by the assurance of protection given the residents of the neighborhood by both the human relations commission and the police department, and that this "special relationship" was created between the City and each and every person who lived "in the area" of the 2600 block of North Waterloo Street, including minor appellant. We see little difference between this argument and the argument that was made in *Chapman.* In *Chapman* appellant argued that a special relationship existed between the City and all individuals who used the Wayne Junction Railroad Station, of which group appellant's decedent was a member. This Court in *Chapman* rejected that argument as urging a duty of protection that was too broad in scope. Appellants attempt to distinguish *Chapman* on the basis that the group to which the City owed a duty in its case, i.e. the residents of the 2600 block of North Waterloo Street, was a smaller group of people than that found in *Chapman,* and, consequently, the duty imposed on the City was less "sweeping." We do not agree.

Although this is an expanding area of the law, *see Williams v. State,* 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137 (Cal.1983) and *Warren v. District of Columbia,* 444 A.2d 1 (D.C.App.1981), and although Pennsylvania appellate law in this area is relatively scant, *Chapman, supra,* the rule almost universally recognized is that the individual claiming a "special relationship" must demonstrate that the police were: 1) aware of the *individual's* particular situation or unique status, 2) had knowledge of the potential for the particular harm which the *individual* suffered, and 3) voluntarily assumed, in light of that knowledge, to protect the *individual* from the precise harm which was occasioned.

None of the cases we have found in other jurisdictions impose a "special relationship" between a municipality and a group of the general public, no matter how narrowly defined the group might be. The focus has been on the individual and whether he or she was owed a specific duty of care. *See Trujillo v. City of Albuquerque,* 93 N.M. 564, 603 P.2d 303 (App.1979) (no special duty to protect young man from violence in a city park); *Sapp v. City of Tallahassee,* 348 So.2d 363 (Fla.App.1977) (no special duty to warn motel employee of suspicious persons in motel parking lot); *Simpson's Food Fair, Inc. v. Evansville,* 149 Ind.App. 387, 272 N.E.2d 871 (1971) (no special duty owed grocer who claimed he went out of business because of a lack of police protection); *Westminster Investing Corp. v. G.C. Murphy Co.,* 140 U.S.App.D.C. 247, 434 F.2d 521 (1970) (no special duty to protect property during civil disturbance); *Keane v. Chicago,* 98 Ill.App.2d 460, 240 N.E.2d 321 (1968) (no special duty owed school teacher murdered on school grounds by student); *but see Schuster v. New York,* 5 N.Y.2d 75, 154 N.E.2d 534, 180 N.Y.S.2d 265 (1958) (special duty owed police informer to assure protection because of status as informer).

■ Minor appellant and his parents admitted in their depositions that none of them had ever contacted the city's human relations commission about any racial problems in their neighborhood, nor had they ever expressed to the police any personal feelings of apprehension or fear for their safety. Minor appellant and his mother indicated in their depositions that prior to this incident they had no knowledge of any racial tensions in the community and never requested special police protection. Although neighbors, minor appellant did not know his assailant, and no evidence has been presented to indicate that anyone, including the police or the human relations commission, knew that Edward Dietzel had a gun or that he would use it. Indeed, the record indicates that John Dietzel, son of Edward Dietzel, was the only family member actively participating in the various confrontations prior to the incident which led to

minor appellant's injuries. Minor appellant acknowledged that the police patrolled the area a "couple of times a day," and that they had been in the neighborhood on the day of the incident. He also admitted that the police arrived "seconds" after he was shot. In view of these undisputed facts, we do not find any narrowing of the public duty so as to find the existence of a "special" duty owed to appellant. Nothing occurred which would have focused the police department's attention on the minor appellant or his assailant so as to create a special duty. The mere happening of an event, unfortunate as it may be, does not predicate liability.

The two common pleas court cases and the one New Jersey case cited by appellants are not persuasive. In *Santucci v. Windber Borough et al.*, 31 Som.L.J. 289 (Somerset C.P.1975), the police knew that a specific individual who worked at the Penguin Bar in Windber was particularly dangerous, and that there was a strong likelihood that the individual would attempt to harm someone. Also in *Santucci*, the police had been to the bar on three prior occasions before the shooting, and a superior officer on the police force actively prevented a junior officer from responding to the call for aid occasioned by the Santucci incident. It was under these circumstances, therefore, that the trial court would not rule out a special relationship, nor grant summary judgment. In the case at hand, the police were given no notice that Edward Dietzel was particularly dangerous, nor were they given any reason to assume such a fact. In *Barnhart v. Henson*, 7 Pa.D. & C.3d 678 (Franklin C.P.1978), the police were specifically notified that a certain individual was being held down at gun point by two other individuals, nevertheless they refused to respond to the call for aid because of a general departmental policy of not entering taverns to quell disputes. In our case the police had no notice that minor appellant was specifically in danger, nor did they fail to respond once the incident was reported. In *Wuethrich v. Delia*, 134 N.J.Super. 400, 341 A.2d 365 (1975), the court refused to grant a motion to

dismiss the complaint for failure to state a claim upon which relief could be granted where, on the day of the shooting, a specific individual was repeatedly reported as "menacing" certain people in a neighborhood with a gun and the police made no attempt to investigate. The court in *Wuethrich* concluded that where a clear warning of a threat to take life is received the police have a duty to investigate. Perceiving a possible violation of that duty, the Court in *Wuethrich* refused to grant the motion to dismiss. The situation presented by this case is distinct from that presented in *Wuethrich*. The police here had no idea Edward Dietzel had a gun or that he was a threat to the community. Likewise, appellants readily admit that when the police were advised of the incident, they did not fail to investigate.

Since the record does not disclose the existence of a factual issue that is material to the question of the City's liability, the action of the trial court granting summary judgment was not error.

Order affirmed.

CAVANAUGH, J., concurs in the result.