## Kluska v. City of Philadelphia

*Stephen R. Bolden,* for plaintiff.
*David A. Soltz,* for defendant.

GOLDMAN, *J.,* November 3, 1989 — The instant matter is before the court on defendant City of Philadelphia's post-trial motions for judgment non obstante veredicto or, in the alternative, a new trial.

### I

### *Factual Background*

On September 28, 1981, at approximately 3:00 p.m., Philadelphia police officers arrested Elizabeth Kluska for public intoxication. Mrs. Kluska was 57 years old and had never been arrested prior to this incident.

Police Officer Schenzle was seated in a fast food restaurant two to three blocks from Mrs. Kluska's home when he was notified of a disturbance out-

side. After speaking to Mrs. Kluska, he realized that she was intoxicated and called for assistance. When the other police officers arrived, Mrs. Kluska started to crawl under a parked vehicle. The officers picked her up and placed her in a police van. Despite police questioning, Mrs. Kluska refused to state her name or address.

The police brought Mrs. Kluska to the 24th Police District about one mile from her home. At that time, Lieutenant Gramlich ascertained her name and address from a receipt in her purse. Instead of bringing Mrs. Kluska home, she was transported to the Police Administration Building in order to prevent her from hurting herself or others. Since she was picked up on the single charge of intoxication, she was not to be charged or fingerprinted and was to be released when she was sober.

Mrs. Kluska was placed alone in the cell furthest from the police matrons' station. She was not permitted to make a phone call nor was one made for her. At 9:05 p.m., approximately six hours after being taken into custody, Mrs. Kluska hanged herself to death with her pantyhose.

## II

### *Procedural History*

Plaintiff, Theodore S. Kluska, individually and as administrator of the estate of Elizabeth Kluska, instituted this wrongful death and survival action against defendant, City of Philadelphia. Elizabeth Kluska's husband, Theodore Kluska, passed away since this action was instituted and the Kluska's mentally retarded son, Gerald, is the surviving beneficiary.

Plaintiff alleged that the city was negligent in failing to prevent Mrs. Kluska from committing

suicide. The city maintained that it cannot be held liable for Mrs. Kluska's self-inflicted death for a variety of reasons, discussed *infra*.

On March 9, 1989, the jury returned a verdict in favor of plaintiff and against defendant in the amount of $250,000.

The city proffers the following arguments in support of its motion for post-trial relief:

(1) The city enjoys sovereign immunity which it cannot waive;

(2) Even if sovereign immunity can be waived, the city has not done so in the instant action; and

(3) Plaintiff has failed to make out a cause of action.

Further, the city alleges that the trial court committed the following errors:

(1) The court erred in refusing to charge the jury that plaintiff had to prove that the police had reason to know that Elizabeth Kluska was suicidal in order to recover;

(2) The court erred in excluding evidence of Gerald Kluska's marriage subsequent to his mother's demise;

(3) The court erred in allowing police directives to be entered into evidence; and

(4) The court erred in admitting evidence of prior suicides.

## III

*Chapter 21-700 of the Philadelphia Code Constitutes a Waiver of Sovereign Immunity*

It is conceded by both parties that the present case does not fall within any of the eight exceptions to sovereign immunity. See Political Subdivision Tort Claims Act, 42 Pa.C.S. §8542(b)(1)-(8).

In *City of Philadelphia v. Middleton*, 89 Pa.

Commw. 362, 492 A.2d 763 (1985), the Commonwealth Court concluded that the City of Philadelphia expressly waived its immunity for negligent police action under Chapter 21-700 of the Philadelphia Code[1] and that such waiver was not preempted by the subsequently enacted Political Subdivision Tort Claims Act, *supra.* The court stated:

"There is not indication, however, that the eight exceptions listed in the act were intended to be exclusive or that local municipalities were forbidden to waive the immunity granted by the act.

. . .

"We, therefore, conclude that the City of Philadelphia acted well within the powers derived from its Home Rule Charter in deciding that it would be in the best interest of its citizens to waive governmental immunity in cases where bodily injury or death has resulted from the negligent or unlawful conduct of its police officers." *Id.* at 365, 492 A.2d at 765.

Although defendant acknowledges that *Middleton* holds that Chapter 21-700 serves as a waiver of the city's immunity in cases involving bodily injury or death caused by the negligence or unlawful conduct of its police officers, defendant argues that two recent Supreme Court of Pennsylvania decisions have rejected *Middleton, supra.*

Defendant maintains the Supreme Court has

---

1. Chapter 21-700 of the Philadelphia Code states:

"Chapter 21-700. Waiver of Governmental Immunity

"§21-701. *Police Officers* —

"(a) The city shall not plead governmental immunity as a defense in any civil action commenced by any person sustaining bodily injury or death caused by negligence or unlawful conduct of any police officer while the latter is acting within the scope of his office or employment."

attacked the *Middleton* analysis in *In re The Upset Sale of Properties Against which Delinquent 1981 Taxes were Returned to the Tax Claim Unit on or about the First Monday of May, 1982 (SKIBO Property),* __ Pa. __, 560 A.2d 1388 (1989), and *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989). In *SKIBO Property,* the court held that governmental immunity is an absolute defense which cannot be waived by a government attorney's negligent failure to plead immunity as a defense. Similarly, in footnote one of *Snyder, supra,* the court held that municipal immunity is a non-waivable defense where government counsel has failed to raise immunity in new matter or in its motion for summary judgment.

Neither of these decisions addressed the question of whether a municipality could waive immunity through an ordinance by its elected legislative branch. The Supreme Court has not questioned the *Middleton* court's conclusion that local ordinances may coexist with the Political Subdivision Tort Claims Act, *supra.* The Supreme Court's ruling that an attorney's negligent failure to plead immunity as a defense cannot constitute a waiver of that defense does not amount to a decision on the situation applicable in *Middleton, supra,* and the present case, let alone a rejection of the standards applied therein. If the city desires now to avoid liability under Chapter 21-700, its aspirations in that regard must be addressed to the Philadelphia City Council.

## IV

### A Police Matron is a Police Officer for the Purposes of Chapter 21-700

Defendant asserts that even if the local ordinance is valid, it does not apply in the present action

because a police matron is not a "police officer" within the meaning of the Philadelphia Code. The city emphasizes that Chapter 21-700 waives governmental immunity only where bodily injury or death is caused by "any *police officer* while the latter is acting within the scope of his office or employment." (emphasis supplied)

The city relies on *Beaver Falls City Council v. Commonwealth of Pennsylvania,* 17 Pa. Commw. 31, 330 A.2d 581 (1975), aff'd., 469 Pa. 522, 366 A.2d 911 (1976), which held that parking attendants were not police officers for the purpose of an unlawful discrimination case. The *Beaver Falls* court stated that the crucial aspect in defining a police officer is whether that person is engaged in "the investigation and detection of serious crimes." *Id.* at 33, 330 A.2d at 583.

Defendant's reliance on *Beaver Falls* is inappropriate in the present case. *Beaver Falls* does not define a police matron nor does it define a police officer for purposes of Chapter 21-700. Definitions of employment status differ in various contexts. See, e.g., *Commonwealth of Pennsylvania v. Pennsylvania Labor Relations Board,* 125 Pa. Commw. 549, 558 A.2d 581 (1989) (holding that park rangers are "police" for purposes of Policemen and Firemen Collective Bargaining Act).

The evidence presented at trial shows that police matrons are directly employed by the Philadelphia Police Department. A matron's duties include searching female prisoners and performing the custodial function of the Police Department in regard to female prisoners. Although not sworn police officers, matrons report to the police officers on a daily basis and must abide by the rules and regulations of the Police Department.

A police matron performs duties which would

otherwise be carried out by police officers. In fact, testimony at trial reveals that some of the police officers stationed at the Police Administration Building holding cells perform the same or similar functions as police matrons. A substantial portion of their duties entails the initial processing of female prisoners through the criminal justice system. The custody of prisoners at this stage is a specific function of the Police Department. The fact that matrons handle female prisoners under this control of the Philadelphia Police Department refutes the city's contention that matrons are more comparable to prison guards than police officers.

Accepting the city's line of reasoning would allow the Police Department to avoid liability under Chapter 21-700 by simply breaking down the many responsibilities of the Police Department into various subparts and delegating these respective duties to unsworn, civilian employees. Such an approach would thoroughly frustrate the purpose of Chapter 21-700 of the Philadelphia Code.

V

*A Duty on the Part of the City to Mrs. Kluska Was Created when the City Entered into a Special Relationship with Her*

Defendant argues that plaintiff failed to prove that the city owed Mrs. Kluska a duty. This court disagrees. In establishing the existence of a special relationship between the city and Mrs. Kluska, plaintiff has satisfied its burden of proof as to duty.

In *Caldwell v. City of Philadelphia,* 358 Pa. Super. 406, 517 A.2d 1296 (1986), the court stated:

"In some limited instances, however, the duty to the public may become a duty to the individual if the police have a 'special relationship' to the com-

plainant that differs from that of the police to the general public. This 'special relationship' may allow the police to be liable for negligent performance of their duty where otherwise liability would not exist."

The court applied the three-part test for determining whether a special relationship was created enunciated in *Melendez v. City of Philadelphia*, 320 Pa. Super. 59, 466 A.2d 1060 (1983). The following three elements must be present to establish a special relationship: (1) police awareness of the individual's particular situation; (2) knowledge by the police of the potential for the particular harm suffered; and (3) a voluntary assumption by the police of the protection of the individual from the precise harm. *Id*. at 64, 466 A.2d at 1063-4. See also section 314A of Restatement (Second) of Torts.

The evidence presented at trial satisfies the *Melendez* requirements. First, the police officers and matrons testified that they were aware of Mrs. Kluska's particular situation. The testimony reveals that the police officers and matrons knew that Mrs. Kluska was intoxicated. Second, the police officers and matrons testified that they had knowledge of the potential for the particular harm suffered by the decedent. Statistical information was introduced which revealed a substantial correlation between intoxication and jailhouse suicides. Third, police personnel testified that they assumed the duty to protect Mrs. Kluska from the precise harm in question.

With all of this evidence before it, the court had a substantial basis upon which to conclude that the *Melendez* special-relationship test had been satisfied and that the city owed a duty to Mrs. Kluska.

## VI

*A Sufficient Factual Basis Exists Supporting the Jury's Determination that the City Was Negligent in Failing to Prevent Mrs. Kluska's Suicide and that the City's Negligence Was a Substantial Factor in Bringing About her Death*

*(A) Plaintiff Made Out a Cause of Action under Section 323 of the Restatement (Second) of Torts and the Comparative Negligence Act*

(1) Defendant argues that plaintiff failed to meet the causation requirements in section 323 of the Restatement (Second) of Torts.[2] Their contention is based on the proposition that section 323 cannot be used to create a duty where none already exists. *Morena v. South Hills Health System,* 801 Pa. 634, 462 A.2d 680 (1983).

Although the city interprets *Morena* accurately, that decision has no bearing on the present case. The city's duty to protect Mrs. Kluska from harming herself or others was established when she was placed in protective custody. See section V, *supra.* The special relationship between the city and Mrs. Kluska created the city's duty, not section 323.

Further, defendant cites *Harding v. Galyias,* 117 Pa. Commw. 371, 544 A.2d 1060 (1988), allocatur denied (February 23, 1989) for the proposition that while conditions of confinement may facilitate sui-

---

2. "§323. *Negligent Performance of Undertaking to Render Services* —

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise care increases the risk of harm, or

"(b) the harm is suffered because of the other's reliance upon the undertaking."

cide, they do not cause it. *Id.* at 380, 544 A.2d at 1065. Defendant further relies on the testimony of its psychiatrist Dr. Michals that "people who want to kill themselves, kill themselves" and that "suicide is not environmentally determined."

The jury had ample evidence before it to conclude that the city was negligent in failing to prevent Mrs. Kluska's death. Specifically, the testimony of plaintiff's experts revealed that the city's actions in handling the decedent fell below the standard of care expected in such situations. Finally, even though no medical expert testified as to whether the city's negligence was a substantial factor in bringing about Mrs. Kluska's death, the above-mentioned evidence coupled with the testimony of plaintiff's expert that police actions actually worsened Mrs. Kluska's situation supports the jury's determination in that regard.

(2) The city also asserts that Mrs. Kluska's deliberate act precludes recovery on a negligence theory of liability. Relying on *Lewis v. Miller,* 374 Pa. Super. 515, 543 A.2d 590 (1988), defendant maintains that where decedent's own conduct is not merely negligent, the case must be removed from the Comparative Negligence Act, 42 Pa.C.S. §7102.

In *Lewis, supra,* the decedent-plaintiff and the defendant were drag racing on a public highway when decedent skidded into a stone wall. The court emphasized that both parties were engaged in "wanton conduct" and that both parties were engaged in conduct which constituted at least four separate crimes.

The critical distinction between the present case and *Lewis, supra* is the fact that a special relationship existed between the city and Mrs. Kluska. Further, defendant's contention that decedent's suicide constitutes the type of "wanton conduct" in-

volved in *Lewis* is dubious. Plaintiff's expert Lindsay Hayes testified that the isolation of single-celled confinement and being cut off from one's family enhances the likelihood of someone committing suicide. Further, plaintiff's expert Patrick Anderson testified that placing Mrs. Kluska in police custody clearly worsened her situation. Under these circumstances, the decedent's conduct does not remove this case from the Comparative Negligence Act. The record supports the jury's determination that the city was negligent in failing to prevent Mrs. Kluska's suicide.

### (B) Chapter 21-700 Applies to Mrs. Kluska's Self-Inflicted Death

The city notes that Chapter 21-700 applies where injury or death is "caused by" negligence or unlawful conduct on the part of a police officer. Defendant maintains that since Mrs. Kluska hanged herself, the ordinance cannot be relied upon to impose liability for her death on the city.

As previously discussed, the evidence proffered at trial establishes that the city was negligent in failing to prevent Mrs. Kluska's death. Moreover, defendant's argument fails to account for the jury's determination that the city's negligence was a substantial factor in bringing about her death. Such a conclusion is supported by the evidence presented at trial. See section VI(A), *supra*.

### VII
*The Court Properly Refused to Charge the Jury that in Order to Recover Plaintiff Must Prove that the Police Officers and Matrons Knew that Mrs. Kluska Was Suicidal*

The court instructed the jury that plaintiff could recover if plaintiff has proven that the city knew or should have known about the potential for this incident arising. Defendant maintains that this charge is contrary to the first two parts of the *Melendez* test, *supra*.

Defendant's argument blurs the distinction between the first two elements of the *Melendez* special-relationship test. The first factor which must be established is that the police had knowledge of the individual's particular situation. The second factor to be proven is that the police had knowledge of the *potential* for the particular harm suffered. Defendant's assertion combines these two distinct elements in arguing that knowledge by the police that Mrs. Kluska was suicidal is the requisite for recovery. Plaintiff did not have that burden of proof.

Plaintiff satisfied its burden of proof under the first requirement by proving that the police knew Mrs. Kluska was intoxicated and in danger of hurting herself. The second element was established by a combination of expert and police testimony, police directives, and statistical information. This evidence revealed that the police were aware of the potential for the particular harm suffered. See section V, *supra*.

## VIII

### *The Court Properly Excluded Evidence of Gerald Kluska's Marriage*

Gerald Kluska is the mentally retarded son of Theodore and Elizabeth Kluska. Plaintiff's claim is based upon Gerald's need to purchase replacement services now that his primary caretaker,

Mrs. Kluska, is dead. Although there is some confusion as to the status of the relationship in which he is currently involved, it appears as though Gerald Kluska is married to a woman who is providing the necessary care.

Both parties agree that in wrongful death and survival actions, the marriage of the surviving spouse is irrelevant. See *Evans v. Reading Co.*, 242 Pa. Super. 209, 363 A.2d 1234 (1976). The city contends that evidence of Gerald's marriage is relevant to rebut plaintiff's primary economic claim since Gerald's wife provides the services which form the basis of the claim.

The court rejects defendant's arguments and concludes that evidence of marriage is irrelevant. There is no authority for the city's contention that marriage of a survivor may be admissible for some purposes. Further, the court is persuaded by the language in *Schuler v. Berger,* 275 F.Supp. 120, 127 (E.D. Pa. 1967), aff'd., 395 F.2d 212 (3d Cir. 1968) (applying Pennsylvania law), stating that the rights of surviving beneficiaries are fixed at the moment of the decedent's death.

Finally, it is well settled that the trial court may exclude evidence that would confuse the jury and divert their attention from the central issues of the case. *Feld v. Merriam,* 314 Pa. Super. 414, 461 A.2d 225, 228 (1983), rev'd on other grounds, 506 Pa. 383, 485 A.2d 742 (1984). Permitting evidence and argument on the strength of Gerald's marriage as well as comparisons of the quality of care provided by his mother as opposed to his wife would necessarily require speculation on the part of the jury and divert their attention from the central issues at trial.

## IX

### *The Court Properly Admitted the City's Police Directives into Evidence*

The city filed a motion in limine to exclude the use of the city's police directives at trial. This motion was denied.

At trial, three directives were entered into evidence; two by plaintiff and one by defendant.

Plaintiff's expert, Mr. Anderson, testified that the police directives set forth the appropriate standard of care. Defendant's expert, John Case, testified that the directives conformed to or exceeded the appropriate standards of care applicable at the time.

The court instructed the jury on the directives as follows:

"In regard to the directives that were in evidence, it's my view of the law that in and of themselves the directives don't become a standard of what the police have to do at the threat of being negligent.

"However, if either from evaluating the expert testimony, the opinions that you heard from the experts about what the standard of care should be, and/or from your own analysis of the circumstances, you make a determination that coincides with the directives, of course, a violation of the standard as you evaluate it would be negligent, but it is not a situation whereby issuing the directive that in and of itself there is a standard that they must comply with. . . . "

The admission of these directives into evidence, therefore, is consistent with *Scarborough v. Lewis,* 359 Pa. Super. 57, 518 A.2d 563 (1986), which held that police directives alone do not establish a duty by the police to the general public. *Scarborough* did not hold, as the city alleges, that is was error to

introduce police directives into evidence. In fact, the *Scarborough* court stated in footnote seven:

"The record reveals that Directive 38 was admitted as evidence of the standard of care with regard to the inspection and maintenance of city property. The propriety of the trial court's admission of the directive into evidence is not challenged on appeal."

The court merely addressed whether a police directive creates a duty, an issue which is not present in the case at bar.

Considering the fact that the court properly instructed the jury on the use of the directives and that the city also moved a directive into evidence, the court properly admitted the police directives.

## X

### *The Court Properly Admitted Evidence of Prior Suicides*

Prior accidents or events may be admitted to impute notice only when occurring "at substantially the same place and under the same or similar circumstances." *Hannon v. City of Philadelphia,* 120 Pa. Commw. 383, 548 A.2d 693 (1988) (quoting *Whitman v. Riddell,* 324 Pa. Super. 177, 471 A.2d 521 (1984)).

On the first day of trial, the court instructed counsel that certain items could be mentioned to the jury in opening statements but if that evidence was excluded at trial, they had made those statements at their own risk. The court continued:

"The motion is to preclude evidence of other suicides, and in that connection I have said that since such evidence forms part of the basis of the expert's testimony, that it could be produced.

"However, there was some contention as to whether the information that the plaintiffs purport

to have is accurate and really shows comparable situations — whether the evidence that they have relates to intoxicants, for example — and it may be that I would exclude this evidence if the comparable circumstances relating to intoxication, for example, are not shown, and the city can, again, argue that the evidence, if it is presented, doesn't bear such a relationship to our situation to allow it to be admitted.

"Again, it can be argued to the jury in the opening but also at your own hazard."

At trial, plaintiff's first witness, Sgt. John Heran, referenced a study he prepared personally, "Suicides from 1980 to 1985." He testified, without objection, that four of the five people who committed suicide while in Philadelphia Police Department facilities in 1980 were intoxicated. Further he testified, without objection, that all five suicide victims hanged themselves with an article of clothing. Sgt. Heran went on to testify, without objection, that there were 22 suicides from 1976 to 1981 in police facilities, even though he did not know what the charges were against the individual for the years 1976 through 1979. The court sustained the city's objection to the introduction of suicides committed after Mrs. Kluska's death.

As the court's instructions to counsel clearly indicate, if the city had any objection to the introduction of the prior suicides on the basis that they were not substantially similar to Mrs. Kluska's suicide, it had to raise an objection to the court when that evidence was presented. Although the city did preserve its objection as to whether prior suicides in general could be introduced, it failed to address each specific incident as they were presented to the court. Therefore, the city has waived any objection on the grounds that the prior suicides were not

substantially similar. 42 Pa.C.S. §227.1; *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974). See also, *B.D.B. Inc. v. Pa. Liquor Control Board,* 67 Pa. Commw. 72, 445 A.2d 1360 (1982), and *Christ v. IBM,* April term 1984, no. 3601 (Katz, *J.*) (filed October 23, 1989).

Moreover, all of the prior suicides occurred in Philadelphia Police Department detention facilities satisfying the requirement that prior events happen in substantially the same place. In addition, the fact that all of the suicide victims hanged themselves with an article of clothing reveals that the circumstances of Mrs. Kluska's death were analogous. The fact that four of the five 1980 suicides were committed by intoxicated individuals further supports the conclusion that the circumstances were similar. The differences in the prior suicides which the city now addresses are clearly outweighed by these similarities.

## XI

### *Delay Damages*

Plaintiff's petition for delay damages is granted in the amount of $145,068.48. This figure represents the period of time covering the filing of the complaint, September 8, 1983, to the verdict date, March 9, 1989, excluding a two-week delay in 1989 attributable to plaintiff. Defendant's arguments contesting delay damages are not novel.

## CONCLUSION

For all of the foregoing reasons, defendant's post trial motions are denied and plaintiff's petition for delay damages is granted.