637 A.2d 871

**Daniel F. HOLSON et al.**

**v.**

**STATE of Maryland et al.**

**No. 814, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Feb. 28, 1994.

E. Gregory Lardieri (Thomas Patrick O'Reilly, on the brief), Greenbelt, for appellants.

Mark H. Bowen, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Pikesville, for appellee.

Argued before WENNER, CATHELL and MOTZ, JJ.

CATHELL, Judge.

Daniel F. Holson, appellant, appeals from an order by the Circuit Court for Prince George's County dismissing his negligence suit. He presents two issues:

1. Whether Defendant State of Maryland and its agent, Gerald R. Turano, owed a duty of care to protect Plaintiff from the actions of a third party.

2. Whether the alleged facts of the case were sufficient to present a question of fact as to whether Defendant's agent owed a duty of care to protect Plaintiff from the actions of a third party.

## The Facts

Appellant, who alleges he was intoxicated, was a passenger in a car operated by another person who was stopped and arrested for an alcohol-related driving offense. The arresting state trooper took the driver into custody and, according to appellant, left him at the scene of the stop.[1] Appellant apparently walked into the path of a vehicle and was struck. He sued the State of Maryland, appellee, and others, alleging that the State's agent (the trooper) was negligent in leaving an

---

1. The officer in deposition stated that he had informed appellant to wait for a tow truck.

intoxicated person, himself, without means of transportation. In granting the motion to dismiss, Judge Femia opined:

> So, the second issue, and I'm being very honest, I can't find any duty on the part of the State.... I'm going to grant that motion [to dismiss] and I'm going to grant it without leave to amend so you can immediately appeal my decision....
>
> ....
>
> ... [B]eing intoxicated ... does not create a special relationship....

 We shall uphold Judge Femia and affirm. Generally, there is no duty, or special relationship creating any such duty, requiring police officers to transport intoxicated passengers of arrested drivers to their ultimate destination, or any destination. This case is primarily controlled by our decision in *Jones v. Maryland–Nat'l Capital Park and Planning Comm'n,* 82 Md.App. 314, 571 A.2d 859 (1990). In *Jones,* we explained:

> Three basic elements are necessary to state a cause of action in negligence. First, the defendant must be under a duty to protect the plaintiff from injury. Second, the defendant must fail to discharge that duty. Third, the plaintiff must suffer actual loss or injury proximately resulting from that failure.

*Id.* at 320, 571 A.2d 859. It is the first of these elements—duty—that Judge Femia found lacking. Appellant's sole claim [2] is that Trooper Turano owed a duty to protect appellant "against the actions of a third party, in this case the driver of a vehicle which struck" appellant.

 It is well established that "there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists either between the actor and the third person or between the actor and the

---

**2.** Appellant's claims against the owner of the car that hit him have been settled.

person injured." *Ashburn v. Anne Arundel County*, 306 Md. 617, 628, 510 A.2d 1078 (1986). Furthermore,

> [i]n order for a special relationship between police officer and victim to be found, it must be shown that the local government or the police officer affirmatively acted to protect the specific victim or a specific group of individuals like the victim, thereby inducing the victim's specific reliance upon the police protection.

*Id.* at 631, 510 A.2d 1078. Appellant does not claim to the contrary or assert that this is an inaccurate statement of Maryland law. Rather, he concedes that in order to prevail here he must show a special relationship between the police officer and himself and in order to prove that relationship, it must be shown, in appellant's words, that "[1] the officer affirmatively acted to protect the specific victim [appellant]—thereby [2] inducing the victim's [appellant's] specific reliance upon police protection."

Yet appellant has utterly failed to allege that Trooper Turano "affirmatively acted to protect" appellant "specifically" or that any affirmative act of the trooper induced appellant's "specific reliance upon police protection." What appellant alleges is that: (1) at 1:10 a.m. the trooper arrested the drunk driver of the car in which appellant was a passenger on Rt. 193 near 48th Street in College Park; (2) after appellant told the trooper that he "was not in a condition to drive" the trooper replied that appellant "would then have to walk home, since the Trooper was taking [the driver] into custody"; and (3) "[l]eaving [appellant] to walk home alone at 1:00 a.m." was negligent since the trooper "knew or should have known that [appellant] was in an intoxicated state." In other words, appellant's complaint is not that the trooper affirmatively *acted* to protect him, but that the trooper *failed* to act to protect him. Assuming the truth of appellant's allegations, as we must at this juncture,[3] the trooper's failure to act may be

---

**3.** The trooper testified in deposition that (1) appellant did not appear to be intoxicated; (2) appellant told the trooper that he could not drive the car because it was "standard shift," not because appellant was in "no

contrary to some moral obligation, but this failure to act does not create a legal duty and so cannot be the basis for an action in negligence. As the Court of Appeals noted in *Davis v. Johns Hopkins Hosp.*, 330 Md. 53, 64, 622 A.2d 128 (1993), quoting from *Jacques v. First Nat'l Bank*, 307 Md. 527, 533–34, 515 A.2d 756 (1986):

> A tort duty does not always coexist with a moral duty.

*Jones*, 82 Md.App. 314, 571 A.2d 859, is further instructive. There, a Park Police officer stopped at the scene of a minor automobile accident to render assistance. The officer testified that one of the drivers may have had a slight odor of alcoholic beverages on her breath, but he did not regard her as intoxicated. He told the allegedly intoxicated driver to park her car and turn off the ignition. When the officer turned his back, the driver sped away and soon thereafter hit another car head on. The victims of the second accident were injured and brought suit against the officer's employer. We held that the officer's *failure to act*, to prevent the allegedly intoxicated driver from speeding away, did not create a special relationship with the driver, or a duty to protect the persons injured in the second accident from the driver.

We note especially the unique circumstances of the case *sub judice*. Here the officer took the drunk driver into custody.[4] It was not the drunk driver (as in *Lamb v. Hopkins*, 303 Md. 236, 492 A.2d 1297 (1985)) that ran over the injured party,

---

condition to drive"; (3) the trooper then told appellant to wait with the car for the tow truck; (4) the trooper asked the tow truck operator to give appellant a ride; but (5) appellant had disappeared before the tow truck arrived.

4. Indeed, the only affirmative act done by the trooper was to arrest and take custody of the drunken driver. Appellant does not allege that this was done specifically to protect him. It is doubtful that it was because certainly others, perhaps numerous others, were also protected by the arrest of the driver, who, by appellant's account, had been drinking since early morning of the previous day and had consumed "quite a bit [of alcohol] ... more than [his] limit, believe me." Moreover, it is certain that the policeman's sole affirmative act, arresting and taking custody of the driver, did not "induce" appellant's "specific reliance upon the police protection." *Ashburn*, 306 Md. at 631, 510 A.2d 1078.

because the driver here was in custody. The officer had taken charge of the "dangerous instrumentality"—the drinking driver. Here the appellant, Holson, was his own dangerous instrumentality—his lack of sobriety caused his injury. He, in essence, argues that the officer should have taken him "into custody" or "taken charge" of him in order to protect him from himself. That is not the officer's duty under the cases. In *Jones*, 82 Md.App. at 321–22, 571 A.2d 859, discussing *Lamb*, we noted:

> The Court then concluded that "because there was no custodial relationship involved in this case, . . . the officers did not take charge of the probationer." *Id.* [303 Md.] at 249, 492 A.2d 1297. The Court noted that "A minority of courts have challenged the proposition that an actor can take charge of a third person only in a custodial situation." *Lamb*, 303 Md. at 249, 492 A.2d 1297.

We then explained the language in *Jackson v. Clements*, 146 Cal.App.3d 983, 194 Cal.Rptr. 553 (1983), that rejected an argument similar to that made by Holson:

> They *proffer* that the *Ashburn* Court,[5] by citing a portion of *Jackson v. Clements*, 146 Cal.App.3d 983, 194 Cal.Rptr. 553 (1983), *involving alteration of risk, implied that if the risk was altered a special relationship would exist. Jackson v. Clements* involved officers responding to a party where minors were allegedly drinking. They investigated the matter and temporarily detained one of the minors, who was later permitted to leave the party with two other minors who had also been drinking. An accident occurred, killing one of the minors as well as occupants of another car.
>
> The trial court dismissed the action on demurrer. The plaintiffs had alleged that even though the officers knew that the minors were under the influence, knew they were too intoxicated to drive, and knew the minors intended to drive, the officers failed to take any action to prevent the minors from driving. The plaintiff in *Jackson* contended

---

5. *Ashburn v. Anne Arundel County,* 306 Md. 617, 510 A.2d 1078 (1986).

that once the officers undertook to investigate the party and made the observations, they had a duty to prevent the minors from driving.

. . . .

... Plaintiffs cite no authority, nor has any been found, to support their claims that a police officer's observation of a citizen's conduct which might foreseeably create a risk of harm to others, or the officer's temporary detention of the citizen, creates a special relationship which imposes on the officer a duty to control the citizen's subsequent behavior. The case law is to the contrary.

*Jones,* 82 Md.App. at 322–23, 571 A.2d 859 (citation and footnote omitted, emphasis added). In essence, we noted in *Jones* that in *Jackson* the court had found that police officers owe no duty to inebriates to protect them from themselves.

Even in the cases where officers have not detained drunken drivers, and those drivers subsequently have injured others, the courts have held that no duty existed to the ones injured because the officers had not taken charge (created a continuing custody) of the drunken driver. Here, appellant asserts he should be able to recover because the officer did not take him into custody or take charge of him and he, because of his intoxication, hurt himself. First, there was no basis for the officer to take Holson into custody, *i.e.,* take charge of him. It is not against the law to be a drunken passenger in an automobile. He was not subject to arrest in the first instance. Even had he been subject to arrest, the failure of the officer to arrest him would not have created a special relationship requiring the officer to protect appellant from himself. Moreover, the decision whether to arrest is, in the absence of a warrant, a discretionary function.

We stated in *Jones,* 82 Md.App. at 335–36, 571 A.2d 859:

The proposition that appellants urged on this Court and on the trial court, in the case sub judice, has, in one form or another, been rejected in a consistent line of Maryland cases at least since the 1898 lynching case of *Cocking v. Wade,* 87

Md. 529, 541, 40 A. 104 (1898), where the Court of Appeals, quoting from an earlier case, stated:

> "A public officer is not liable to an action ... where the act ... is one in relation to which it is his duty to exercise judgment and discretion, even though an individual may suffer by his mistake. A contrary principle would indeed be pregnant with the greatest mischief."
>
> . . . .

Having determined that there was no probative evidence supporting any possible legal conception of a "special relationship" between the officer and the actor or the victim, we need not further address whether Officer Bratburd's conduct was negligent. We hold that there was no legal duty owed to the plaintiff. Accordingly, there could be no actionable negligence for which the officer or his employer would be held liable. Additionally, Officer Bratburd was acting in a discretionary capacity and was thus immune from suit.

A recent case in which the Court of Appeals considered whether a special relationship had been established is *Eisel v. Board of Education*, 324 Md. 376, 597 A.2d 447 (1991). There it was asserted that school counselors, knowing of the possibility of a child's inclination towards suicide, had failed to warn the child's parents. The Court initially discussed suicide cases throughout the country involving patients in the care of physicians and/or hospitals and noted: "Recent attempts to extend the duty to prevent suicide beyond custodial or therapist-patient relationships have failed." *Id.* at 382, 597 A.2d 447.

The Court then noted that those cases finding no duty were distinguishable from *Eisel* by a number of factors. They did not involve a case in which the victim was an adolescent and, for the most part, were cases where the defendant physically failed to prevent the suicide. More importantly, the cases finding no liability did not involve anything akin to an *in loco parentis* relationship, while the *Eisel* case did. The Court explained:

Further we have recognized

"the doctrine that the relation of a school vis a vis a pupil is analogous to one who stands in loco parentis, with the result that a school is under a special duty to exercise reasonable care to protect a pupil from harm...."

*Id.* at 384, 597 A.2d 447 (quoting *Lunsford v. Bd. of Educ.*, 280 Md. 665, 676, 374 A.2d 1162 (1977)). *In loco parentis* means "In the place of a parent ... charged, factitiously, with a parent's rights, duties, and responsibilities. 'Loco parentis' exists when person *undertakes care and control* of another...." *Black's Law Dictionary* 787 (6th ed. 1990) (emphasis added). "[I]n the place of a parent...." *Random House Dictionary of the English Language* 733 (unabridged ed. 1983).

The Court in *Eisel* first found a special relationship, *i.e.*, care and control of the victim, before it addressed foreseeability and ultimately found that the suit could be maintained. Thus, *Eisel* was based initially upon a special relationship of care and control. There is an essential difference between parents surrendering custody and control of their child to a school and an inebriate attempting to force a reluctant policeman (according to Holson) to assert custody and control over him.

*Restatement Second of Torts*, § 314 (1965), "Duty to Act for Protection of Other" states, "The fact that an actor realizes, or should realize, that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." In its comment, the restatement distinguishes "misfeasance," *i.e.*, active negligence and "non-feasance," *i.e.*, negligent omission, stating:

In the early law one who injured another by a positive affirmative act was held liable.... The courts were far too occupied with the more flagrant forms of misbehavior to be greatly concerned with one who merely did nothing.... Hence, liability for non-feasance was slow to receive any recognition in the law. It appeared first in, and is still largely confined to, situations in which there was some special relationship between the parties....

The Restatement in section 314A then specifies special relationships that can create duties, including "(4) one who is required by law to take, or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection.... " In the case at bar, Holson sues appellee claiming, in essence, that the negligent act of omission (non-feasance) was the officer's failure to volunteer to take Holson into custody. In other words, Holson contends that the failure to create a special relationship is itself a special relationship giving rise to the duty to protect him. We disagree.

The Court in *Melendez v. City of Philadelphia*, 320 Pa.Super. 59, 466 A.2d 1060 (1983) (a case involving the shooting by another of a young boy) initially noted:

> Generally, it is acknowledged that there is no duty resting on a ... governmental body to provide police protection to any particular person. However, where the circumstances establish a "special relationship" ... then an exception to the general rule will be found and an affirmative duty to act will be imposed....
>
> ... A special relationship is generally found to exist only in cases in which an *individual* is exposed to a special danger *and the authorities have undertaken the responsibility to provide adequate protection for him.*

*Id.* 466 A.2d at 1063 (some emphasis added). Melendez had argued that the city had created such a special relationship by the fact that it had given assurances of protection to the residents of the neighborhood. The Pennsylvania Court rejected his contention and then noted:

> [T]he rule almost universally recognized is that the individual claiming a "special relationship" must demonstrate that the police were: 1) aware of the *individual's* particular situation or unique status, 2) had knowledge of the potential for the particular harm which the *individual* suffered, and 3) *voluntarily assumed,* in light of that knowledge, *to*

*protect the individual from the precise harm* which was occasioned.

*Id.* at 1063–64 (some emphasis added).

In a case somewhat factually similar to the case at bar, Kingston, New York police officers were called to quell a disturbance. *Parvi v. City of Kingston*, 41 N.Y.2d 553, 394 N.Y.S.2d 161, 162, 362 N.E.2d 960, 962 (1977). When they arrived they saw two persons being disorderly and boisterous. Another person, Parvi, was attempting to calm down the other two. All three were intoxicated. It was conceded that there were no grounds for the arrest of Parvi. The police took all three persons into custody and transported them out of town to a former golf course where shelters, etc., were situate and left them there. Some time later, Parvi and one of the other persons, hearing vehicular traffic (350 feet away) climbed over a guardrail and stumbled onto the New York State Thruway. *Id.* They were struck by an automobile. Parvi was seriously injured and his companion was killed. The court concluded that Parvi had stated a cause of action both for false arrest and for negligence. *Id.* As to the false arrest count, the Court concluded that it should not have been dismissed "since the alleged imprisonment [of Parvi who had done nothing] here was without a warrant and therefore an extrajudicial act, the burden not only of proving, but of pleading legal justification was on the city. . . ." *Id.* 394 N.Y.S.2d at 164, 362 N.E.2d at 963.

As to the negligence count, the court primarily based its decision on the fact that Parvi had in fact been taken into custody, saying:

[W]e prefer to give our attention to the more fundamental question of the basic duty owed by the city to the plaintiff in this situation, a question somewhat obscured by the jargon of negligence terminology (Green, The Duty Problem in Negligence Cases, 28 Col.L.Rev. 1014, 29 Col.L.Rev. 255).

In that connection, we do not believe it aids our analysis of the negligence count to speculate on the duty of a police officer to arrest or not to arrest intoxicated persons. In-

stead, we confront directly the duty of police officers to persons under the influence of alcohol *who are already in their custody, as was the case here once Parvi was compelled to enter the police car. The case law is clear that even when no original duty is owed to the plaintiff to undertake affirmative action, once it is voluntarily undertaken, it must be performed with due care* (*Marks v. Nambil Realty Co.,* 245 N.Y. 256, 258, 157 N.E. 129, 130; *Glanzer v. Shepard,* 233 N.Y. 236, 239, 135 N.E. 275, 276; *Zelenko v. Gimbel Bros.,* 158 Misc. 904, 287 N.Y.S. 134, affd., 247 App.Div. 867, 287 N.Y.S. 136). As Restatement of Torts 2d (§ 324) puts it, "One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge or (b) the actor's discontinuing his aid or protection, if by so doing, he leaves the other in a worse position than when the actor took charge of him".

. . . .

Finally, a word of clarification may be in order as to the legal role of plaintiff's voluntary intoxication. To accept the defendant's argument, that the intoxication was itself the proximate cause of Parvi's injury as a matter of law, would be to negate the very duty imposed on the police officers *when they took Parvi and Dugan into custody.*

*Id.* 394 N.Y.S.2d at 165–66, 362 N.E.2d at 964–65 (emphasis added).

In the case here, the officer never took control of Holson, let alone took Holson into custody. Indeed, the officer's failure to take him into custody is the basis for Holson's claim of negligence. Had the officer taken him into custody, or at least taken control of him, then, under the cases, including *Parvi,* the officer might have had a special relationship that required him to anticipate reasonably foreseeable dangers. But there is no beginning or inception of duty unless custody or control is imposed. If it is not imposed, nothing follows in a negligence sense. The door to negligent-omission negli-

gence is opened upon the creation of a control or custodial, *i.e.*, special relationship. The foreseeability requirement follows from such a relationship. Foreseeability *s not* the special relationship.

■ Until the door to duty, foreseeability, ordinary care, etc., is opened by a custodial or other special relationship, suits in negligence based upon negligent omission, such as that in the case at bar, cannot be successfully maintained.

In *Everton v. Willard,* 468 So.2d 936 (Fla.1985), the court held that the decision to arrest is discretionary. The court noted:

There has never been a common law duty of care owed to an individual with respect to the discretionary judgmental power ... [of] ... arrest.... We recognize that, if a special relationship exists, ... there could be a duty of care.... This relationship is illustrated by the situation in which the police *accept* the responsibility to protect a particular person....

... A substantial majority of the jurisdictions in this county that have addressed this issue follow this view.[6]

*Id.* at 938.

In *Stepnes v. Adams,* 452 N.W.2d 256 (Minn.App.1990), the facts indicated that Adams and Sage were together drinking in

**6.** *Everton* cites cases from Connecticut, Indiana, Kansas, Michigan, Minnesota, and Wisconsin. The Florida court indicates it had found only two jurisdictions to the contrary, Arizona and Massachusetts. We note further that California has held both ways. *See Andrews, infra,* and *People v. Tobin,* 219 Cal.App.3d 634, 269 Cal.Rptr. 81 (Cal.App. Dist.1990), and *see Weldy, infra,* a New Hampshire case. In the Massachusetts case, *Irwin v. Town of Ware,* 392 Mass. 745, 467 N.E.2d 1292 (1984), decided by an evenly divided court, the Court found a duty to all members of the general public that required officers to remove intoxicated drivers. That is directly contrary to the Maryland holdings in *Ashburn, Jones,* and even *Lamb,* and continues to be an issue in contention in the Massachusetts courts. The Massachusetts courts may, in fact, be overturning their holding in *Irwin. See Carelton v. Town of Framingham,* 34 Mass.App.Ct. 686, 615 N.E.2d 588 (1993); *Jean W. v. Commonwealth,* 414 Mass. 496, 610 N.E.2d 305 (1993); and *Cyran v. Town of Ware,* 413 Mass. 452, 597 N.E.2d 1352 (1992) (cases show a

a bar. Both knew that Adams was intoxicated. A friend of Adams, Wicker, offered to drive Adams home. There was evidence that Sage refused Wicker's offer, asserting that she would drive Adams home. *Id.* at 257.

Sage had to help Adams get in Adams's car and did not drive Adams, permitting Adams to drive, while Sage following in her car. En route, Adams ran over Stepnes, who, as a result, became an incomplete quadriplegic. *Id.* The trial court granted summary judgment for Sage. Stepnes appealed, alleging that Sage owed him a duty based upon a special relationship arising out of Sage's assumption of responsibility for Adams. *Id.* at 257–58. The court restated the general rule as to the necessity of a "special relationship" in respect to negligent omission negligence (as opposed to affirmative negligence) and then held:

> [T]here is no sufficient nexus between Sage's actions and Stepnes' injury. There is inadequate evidence that Sage exercised control over Adams' behavior or her vehicle.... This is not a custodial situation where Adams was completely within Sage's control.

*Id.* at 259. In *Russell v. City of Columbia,* 305 S.C. 86, 406 S.E.2d 338 (1991), police officers were called to the location of a fight. When they arrived, they found the victim being treated by others for his injuries. *Id.* 406 S.E.2d at 338–39. The officer then took control away from those administering assistance and determined that disorderly conduct had occurred, but could find no one who wanted to press charges. The officers some time later ordered, or "insisted," that the victim leave the premises. He did, fell off a bridge and was killed. *Id.* at 339. The court, in permitting the case to go forward, commented that "[u]nder common law, even where there is no duty to act but an act is voluntarily undertaken, the actor assumes the duty to use due care." *Id.* at 339. In the case *sub judice,* no duty was assumed because the officer declined to act at all. *See also Andrews v. Wells,* 204 Cal.

---

continuing dispute amongst the judges of that court as to the status of the rule announced in *Irwin*.).

App.3d 533, 251 Cal.Rptr. 344 (1988); *Leake v. Cain,* 720 P.2d 152 (Colo.1986); *Doerner v. City of Asheville,* 90 N.C.App. 128, 367 S.E.2d 356, *cert. denied,* 323 N.C. 172, 373 S.E.2d 106 (1988) (While decided on the grounds that even if duty existed, it was not breached, the court restated the general rule.); *Hake v. Manchester Township,* 98 N.J. 302, 486 A.2d 836 (1985) (where the victim hanged himself while in custody at the police station and where an existence of a duty was apparently conceded, though the case was decided on other grounds).

The few cases in which courts have not followed the general rule are not persuasive. *Weldy v. Town of Kingston,* 128 N.H. 325, 514 A.2d 1257 (1986), involved a statute providing that whenever a police officer discovered a person illegally transporting intoxicating liquors, that person *"shall"* be arrested. *Id.* 514 A.2d at 1260. An officer stopped several teenagers illegally driving in an automobile, seized the beer, but allowed the teenagers to proceed on. They drank additional alcohol and, ultimately, had an accident in which one of them, Weldy, was killed. *Id.* at 1259. The New Hampshire court first held not only that the statute imposed a duty on the officers but also that a common law duty existed. It ignored the general rule that a special relationship must exist under the common law before a duty initially arises and went directly to foreseeability, primarily basing its decision on foreseeability. *Id.* at 1260. It stated:

> Police officers are obligated to protect the general public, and reasonable prudence dictates that teenagers illegally transporting alcohol be detained. The foundation of a cause of action for negligence is the doctrine of foreseeability. "Duty and foreseeability are inextricably bound together." *Corso v. Merrill,* 119 N.H. 647, 651, 406 A.2d 300, 303 (1979).

*Id.,* 514 A.2d at 1260. *Corso v. Merrill,* 119 N.H. 647, 406 A.2d 300 (1979), was an active negligence case, not a negligent omission type of case. In *Corso,* the victims sued the driver of another car that had negligently struck their child. In cases of active negligence, no special relationship or custody is

required in the first instance. The *Weldy* court used the active negligence principles stated in *Corso* in a negligent omission case, which normally requires a special relationship, by going directly to the foreseeability element without first determining the existence of a special relationship. In doing so, they abandoned, for New Hampshire, the distinction generally recognized in a long line of cases in most jurisdictions, including Maryland.

See also cases distinguishable because they are based upon statutes: *Daughenbaugh v. Bethlehem Steel Corp.*, 891 F.2d 1199 (6th Cir.1989), decided under the negligence provisions of the Jones Act, and *Fudge v. Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986). Additionally, some states have held that the decision to arrest is not a discretionary, but a ministerial act. *Irwin v. Town of Ware*, 392 Mass. 745, 467 N.E.2d 1292 (1984).

We are especially cognizant of the obvious problems that might exist should an officer take drunken passengers into custody. Presumably, any duty requiring an officer to take control over this particular drunken passenger would require the officer to take control over all drunken passengers. In order to transport one or more drunken passengers, an officer would obviously have to search them for weapons before letting them in the vehicle. The officer would also have to handcuff them—for the officer's own safety, to prevent their actions from causing an accident that might cause injury to others, and probably to protect them from each other.

An officer who searches and handcuffs passengers who have committed no illegal act also invites suit for false imprisonment or actions under 42 U.S.C. § 1983 for depriving the intoxicated persons of their civil rights. Such actions have in fact been maintained. *See Parvi*, 41 N.Y.2d 553, 394 N.Y.S.2d 161, 362 N.E.2d 960, *supra*, and *White*, 592 F.2d 381 (7th Cir.1979), *infra*.

Additionally, what is the officer going to do with the inebriates? If the inebriates are taken home, how far does the duty extend? To the intoxicated person's yard, porch, bedroom,

bed—does the officer have a duty to others in the house to protect them from the inebriate who has been taken into custody?

We hold that absent continuing custody or control of an inebriate, a police officer has no special relationship that creates any duty requiring the officer to protect the person from the consequences of his or her own acts.[7]

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.

---

**7.** We do not address whether special relationships giving rise to a duty creating the potential for negligent omission actions may exist outside of a custodial relationship in other relationships such as joint enterprises, joint ventures, and master/servant relationships. *See Price v. Halstead,* 177 W.Va. 592, 355 S.E.2d 380 (1987). These other scenarios are not applicable in the case *sub judice.* We also do not address the viability of claims under 42 U.S.C. § 1983 that might exist under some circumstances. See the "body integrity" case of *White v. Rochford,* 592 F.2d 381 (7th Cir.1979), where an officer arrested a driver drag racing, leaving "at risk" children behind.